# Nathan *v.* Tompkins.

*Bill in Equity for Injunction against Consolidation of Private Corporations.*

1. *Motion to dissolve injunction; amendable defects in bill.*—A motion to dissolve an injunction, for want of equity in the bill, can not perform the office of a demurrer, but only raises the inquiry, whether the facts alleged, if well pleaded, make out a case for equitable relief; and all amendable defects in the bill will be regarded as amended.

2. *Private corporations; equitable relief to stockholder.*—Before a stockholder in a private corporation can bring suit in respect to the acts of the directors, whether *intra* or *ultra vires*, or in respect to *intra vires* acts of a majority of the stockholders, or injuries arising from the inefficiency or unfaithfulness of the governing body—cases in which the injury is to the corporation as such, and not directly to the com-

[Nathan v. Tompkins.]

plaining stockholder—he must aver and show an honest effort to obtain redress within the corporation, by an appeal to the proper governing ·body, or a reasonable excuse for his failure to do so; but, where there is a real contest between him and the corporation, growing out of the acts of a majority of the stockholders in convention, in excess of their powers, express or implied, he may maintain a suit in equity to prevent the attempted wrong and injury—as, to enjoin an unauthorized consolidation with another corporation, which a majority of the stockholders have agreed on—without the useless ceremony of asking them to sue themselves.

3.  *Same; abandoning acts complained of; new matter in answer.* Where the bill seeks to enjoin the consummation of an attempted consolidation with another corporation, as shown by resolutions adopted by the majority at a stockholders' meeting, which declared that the consolidation "do now take place, and be fully carried into effect," followed by an election of officers for the consolidated company; the abandonment of the attempt by the defendants, on discovering the illegality of their proceedings, not shown by an official declaration, or by the rescission of the resolutions, does not destroy the equity of the bill; and such new matter in avoidance, not being responsive, can not be considered on motion to dissolve the injunction.

4.  *Same; election of directors or officers.*—A court of equity will not entertain jurisdiction of a suit, the purpose of which is merely to test the legality of an election of directors, or to remove an officer of a corporation who is in actual possession; yet, when the question arises incidentally and collaterally, in a suit rightfully filed for another purpose, the court will decide it; as where a new board of directors, elected with a view to effecting a consolidation with another corporation, attempt to consummate it, and a bill is filed to enjoin them, the court may and will inquire into the legality of their election.

5.  *Street railroad companies; election of directors and officers.*—When a street railway company is organized under the general statutes (Code, §§ 1917-28), the directors are required to be elected annually, and hold office until their successors are elected and qualified; a majority can neither abrogate nor extend their term of office, by merely changing the time for the annual meeting of stockholders, at which they are to be elected; and if a transfer of their stock, by a majority of the board, disqualifies them to longer act in that capacity, or constitutes good cause for their removal, it does not affect the rights of the others, nor authorize the election of an entirely new board of directors; and such new board having elected officers, the court will, on a proper application, declare their election illegal, and restrain their officers by injunction from interfering with the control and management of the affairs and property of the corporation.

APPEAL from the Chancery Court of Colbert.

Heard before the Hon. THOS. COBBS.

The original bill in this case was filed on the 14th May, 1887, by J. H. Nathan, as a stockholder in the Sheffield and Tuscumbia Street Railway Company, a private corporation organized under the general statutes (Code, §§ 1917-28); against the said corporation, and against the Sheffield Street Railway Company, another corporation similarly organized, Henry B. Tompkins, and nine other persons, stockholders, directors and officers, or assuming to act in that capacity; and sought, principally, to enjoin and prevent the further

VOL. LXXXII.

consummation of an attempt to consolidate the two corporations, which some of the individual defendants had effected, or endeavored to effect, against the wishes and objections of the complainant and other stockholders. The corporation first named was organized, January 6th, 1887, as stated more fully in the opinion of the court, on a cash capital of $50,000, which was divided into one thousand shares; and of these shares 510 were held by the parties who favored the consolidation, and were voted for that measure, the owners of the remaining 490 shares being absent. Of the shares held by Tompkins, one of the majority, twenty were transferred to him by John F. Scott, one of the defendants; and the bill sought to set aside this transfer, and to enjoin said Tompkins from voting or using that stock, on the ground that the transfer was in violation of a written agreement between said Scott, the complainant, and several other stockholders of said corporation, of which said Tompkins had notice. By the terms of this agreement, a copy of which was made an exhibit to the bill, the stock held by the subscribers was placed in the hands of trustees for the term of three years, unless the combination was sooner dissolved by unanimous consent, and was to be voted as a unit as determined by a majority of three-fourths; the right to sell was reserved to each subscriber, but the option to buy at the price offered was also reserved to the others, and the stock sold was not to be voted until the termination of the trust; and there were other provisions, which require no notice. The bill alleged that the transfer by Scott to Tompkins was made, in violation of this agreement, without first offering it to the other subscribers; and insisted that Tompkins had no right to vote it until the termination of the trust by its own terms. The bill prayed, also, that the officers of the old corporation be enjoined from delivering any of the books and property belonging to it, to the defendants who claimed to have been elected officers of the consolidated company, and the latter be enjoined from assuming any control or management of the property or business of the old corporation; and the general prayer, for other and further relief, was added.

On the filing of the bill, an injunction was granted as prayed, by Hon. H. C. SPEAKE. After answers filed, the defendants moved to dissolve the injunction, both for want of equity in the bill, and on the denials of the answer. The chancellor sustained the motion, and his decree is here assigned as error.

[Nathan v. Tompkins.]

BRICKELL, SEMPLE & GUNTER, and J. B. MOORE, for the appellant.—(1.) On motion to dissolve an injunction, for want of equity in the bill, all amendable defects will be considered as amended; and when the motion is founded on the denials of the answer, they must be full, complete and positive, without evasion or ambiguity.—*Rembert v. Brown*, 17 Ala. 667; *Jones v. Ewing*, 56 Ala. 360; *Chambers v. Ala. Iron Co.*, 67 Ala. 353; *Bibb v. Shackelford*, 38 Ala. 611; *E. & W. Railway Co. v. E. T., Va. & Ga. Railroad Co.*, 75 Ala. 278; *Farris & McCurdy v. Houston*, 78 Ala. 250.  (2.) That the attempted consolidation of the two companies, under the facts stated in the bill, is an act *ultra vires* and void, can not be doubted.—*Sup. Com. Knights of Golden Rule v. Ainsworth*, 71 Ala. 445; *Insurance Co. v. Hobart*, 2 Gray, 543; 2 Morawetz on Corporations, § 1120; 1 High on Injunctions, § 605.  The answer admits, in effect, the illegality of these proceedings, and alleges an abandonment of them; but this is new matter in avoidance, which can not be considered on this motion; and it is evident that the alleged abandonment contemplates a change of formalities only, leaving the parties at liberty to consummate their purposes by other means. (3.) One or more stockholders may file a bill in equity in their own name, when the act complained of is *ultra vires*, and has been committed by a majority of the stockholders themselves; or when the facts stated show that the guilty parties have obtained control of the corporation, and that an appeal to the governing body would be a nugatory act. 1 Moraw. Corp., § 242; *Dodge v. Woolsey*, 18 How. 331; *Clinch v. Financial Corporation*, L. Rep., 5 Eq. Cases, 478; *Wilcox v. Bickell*, 11 Neb. 154; *Bliss v. Anderson*, 31 Ala. 621; *Christopher v. Mayor*, 13 Barb. 567; *Sears v. Hotchkiss*, 25 Conn. 171; *Elkins v. Railroad Co.*, 36 N. J. Eq. 467; Taylor on Corporations, § 688.  (4.) Having acquired jurisdiction for the purpose of preventing the consummation of this illegal act, the court will go on and inquire into the validity of the election of these directors, and the methods by which they have obtained control of the corporation.—Cook on Corporations, §§ 614-18, 668; Taylor on Corporations, §§ 536, 581; 32 N. J. Eq. 236; 4 Halst. 344; 16 Cal. 146. (5.) Notice must be given of the time, place, and business to be transacted, to authorize a special meeting of a private corporation. When the minority met at the appointed time and place, and, after waiting an hour, adjourned for want of a quorum, the call for a meeting was exhausted; and the subsequent assembly of the others, even if they had been authorized to vote the Scott stock, was without authority, and their action void.— Cook on Corp., § 595, note; *Buena-*

[Nathan v. Tompkins.]

*ventura Com. Co. v. Vassault*, 50 Cal. 534 ; *People v. Railroad Co.* 55 Barb. 344 ; *Elkins v. Railroad Co.*, 36 N. J. Eq. 470. (6.) But the transfer by Scott to Tompkins, in violation of the agreement between Scott, complainant and others, gave him no right to vote the transferred stock. The agreement between Scott and others, that their stock should be held in trust for three years, and should be voted as a unit, and that any of them desiring to sell should give the others an option to purchase, was supported by a sufficient consideration, and was not violative of any principle of law or public policy.—8 Wheat. 174 ; 1 Peters, 1. Nothing but an equity was left in Scott, and he could convey nothing more to Tompkins.—Cook on Stockholders, §§ 374, 416 ; 67 Ala. 109, 139 ; *First Nat. Bank v. Gifford*, 47 Iowa, 575 ; *Chiles v. Boone*, 10 Peters, 63. The answer of Tompkins is not sufficient to entitle him to the benefit of the defense of a *bona fide* purchase without notice, even if Scott could have transferred to him a good title.—*Gresham v. Ware*, 79 Ala. 198.

ROQUEMORE, WHITE & LONG, COOPER & COOPER, and KIRK & ALMON, *contra.*—(1.) The attempted consolidation of the two companies alone gave equity to the bill, and the illegality of the attempt is admitted ; but this being admitted, and the attempt abandoned, as alleged in the answers, the equity of the bill is gone, and the injunction was properly dismissed on motion.—Cases cited in Brick. Digest, vol. 1, p. 677, § 548. The resolutions in favor of consolidation being *ultra vires* and void, no corporate or official action was necessary to repeal or rescind them, since they never had any vitality or effect whatever. The injunction was aimed against a meditated and attempted wrong, and not to redress an injury already committed ; and it was therefore properly dismissed, although the complainant might be entitled to relief on final hearing.—3 Wait's Actions & D. 680. (2.) The original bill sought to prevent the attempted consolidation, but the amended bill sought to enjoin the defendants from further acting as directors. This was an abandonment of the injunction under the original bill ; and although the amendment was allowed as of course, the circuit judge had no power to allow it without prejudice to the injunction.—1 Dan. Ch. Pl. & Pr. 425–27. (3.) In the original bill, the defendants are sought to be charged, not officially, or in their representative capacity, but personally and individually ; and the amended bill, alleging that they " claim to be directors," &c., confirms this view. Under these allegations, the right of action, if any, is in the

[Nathan v. Tompkins.]

corporation, and no reason is shown why a stockholder should file the bill in his own name.—Cook on Stockholders, § 694 ; *M. & P. Line v. Waganer*, 71 Ala. 586 ; *Cox v. Tusk. Man. Co.*, 68 Ala. 71 ; *Hawes v. Oakland*, 104 U. S. 160 ; *Detroit v. Dean*, 106 U. S. 537. (4.) The amended bill seeks to try the title of certain defendants to the office of directors, a question of which a court of equity has no jurisdiction. *Owen v. Whittaker*, 20 N. J. Eq. 122. A statutory remedy is provided for this.—Code, § 3422. Nor can the equity of the bill be maintained for this purpose, on the ground that the jurisdiction of the court has rightfully attached for another purpose.—*Scraggs v. Driver*, 31 Ala. 291. (5.) If the court can inquire into the regularity of the proceedings at the called meeting, or the legality of the meeting itself, it is submitted that a minority could not, by a premature meeting and adjournment, prevent the majority from holding a meeting, within a reasonable time, at the place specified in the notice ; and that all presumptions will be indulged in favor of the regularity of their proceedings.—*Med. Society v. Weatherly*, 75 Ala. 248 ; Cook on Stockholders, 590, 600. (6.) The agreement between Scott, Nathan and others, was without consideration, illegal, and void on grounds of public policy.—*Fisher v. Goodrich*, 42 N. Y. 644 ; *Cook v. Kennerly*, 12 Ala. 48 ; *Brandon v. Robinson*, 18 Vesey, 429.

CLOPTON, J.—The appeal is taken from a decree of the chancellor made in vacation, on a motion to dissolve, on bill and answer, a temporary injunction, on the ground of want of equity in the bill, and on the denials of the answers. Though an injunction should not be continued, when it is apparent that the bill is wanting in equity, a motion to dissolve on this ground can not and does not perform the office of a demurrer. The inquiry on such motion is, do the facts alleged, if sufficiently pleaded, make a case calling for equitable interposition ? If so, all amendable defects will be regarded, for the purpose of the motion, as cured by amendment.—*East & West R. R. Co. v. E. T., V. & G. R. R. Co.*, 75 Ala. 275.

2. The primary purpose of the original bill, which is brought by appellant as a stockholder in the Sheffield and Tuscumbia Street Railway Company, is to annul, so far as accomplished, the consolidation of that company with the Sheffield Street Railway Company, and to prevent and restrain the consummation of the consolidation. Both companies are incorporated under the general laws of the State, for the purpose of building and operating street railways from Tuscumbia ; one to the city of Sheffield, and the other

to East Sheffield, the two places adjoining each other. The Sheffield and Tuscumbia Street Railway Company was organized January 6, 1887, by the election of seven directors, viz., Ferdinand D. McMillan, Arthur H. Kellar, Alfred H. Moses, John T. Hull, Ed. B. Almon, W. B. Russell, and G. W. Swartz. At subsequent meetings of the directors, McMillan was elected president, Hull vice-president, Almon secretary, and complainant treasurer; and by-laws were adopted. The other company was incorporated and organized subsequently.

So far as necessary to be stated in this aspect of the bill, the allegations are, that certain persons who were stockholders in both companies, and who are largely interested in the development of East Sheffield, undertook to manipulate the consolidation of the two corporations. In order to accomplish this object, the president called a meeting of the directors of the Sheffield and Tuscumbia Street Railway Company, at the Cleveland Hotel, to be held at 10 o'clock A. M., of April 27, 1887. Two of the directors, Moses and Kellar, who were not in the combination, met at the appointed hour and place, and, after waiting an hour, no others appearing, adjourned for want of a *quorum.* Afterwards, at 12 o'clock, four other directors, McMillan, Hull, Almon, and Russell, met and held a meeting, at which the by-laws were amended, so as to repeal the provision that no stockholder shall be eligible as director, unless he shall have held his stock continuously since the last annual election of directors; to allow any stockholder the right to vote, without reference to the time he had held his stock; and to change the annual meeting of the stockholders, from the third Tuesday in April, 1888, to the second Tuesday in May, 1887; and after the amendment of the by-laws, the president called a meeting of the stockholders to be held on May 10, 1887.

The bill further alleges, that a meeting of stockholders was organized, on the day appointed, in pursuance of the call of the president. At this meeting, seven new directors were elected, consisting of the defendants, Tompkins, Woodson, Almon, White, Boylston, Crowe, and Steele; the former president McMillan, vice-president Hull, and director Russell, transferred their stock to Tompkins, April 27, 1887; and subsequently, the new directors elected Tompkins president, Woodson treasurer, Almon secretary, and White superintendent. And at this meeting of the stockholders, propositions for consolidation submitted by the Sheffield Street Railway Company were adopted, and resolutions were passed, that the consolidation should be car-

ried into effect, and that the stockholders of the two corporations convene at once as stockholders of the consolidated company, to enact by-laws, elect a board of directors, and to do all things necessary and proper to effectuate the scheme of consolidation.

It is unnecessary to consider the illegal and *ultra vires* character of the attempted consolidation. This is admitted; but the equity of the bill is assailed, on the ground that it proceeds against the individual defendants, not as officers of the corporation, but as third parties usurping the right and power to manage its affairs and property; and that complainant does not bring himself within the exception, by an averment that he has appealed to, or requested the governing body, or the shareholders, to redress the grievance complained of, and has failed to obtain remedial action. There can be no doubt, that before a stockholder can bring suit in respect to the acts of the directors, whether *intra* or *ultra vires*, or in respect to *intra vires* acts of a majority of the shareholders, or to injuries arising from the inefficiency or unfaithfulness of the managing body—cases where the injury is to the corporation as such, and not directly to the stockholder—he must aver and show an honest effort to obtain redress within the corporation, and to induce action on the part of the directory and of the stockholders, one or both, as may be proper, or a reasonable excuse for not doing so. In *Tuskaloosa Man. Co. v. Cox*, 68 Ala. 71, after stating the general rule, it is said : "We will not say there may not be cases,in which the strong restraining arm of the Chancery Court may be invoked in the first instance. The whole governing force may become corrupt, or may enter into a combination, either *ultra vires*, or so destructive of the policy and property of the corporation, as to show an appeal to the directory would be fruitless, and delay extremely perilous."

But the case made by the bill does not come within either of the classes mentioned. It substantially avers, that at the meeting of the shareholders, the defendants Tompkins, Almon, Boylston, and White, claiming to represent five hundred and ten shares of the capital stock, voted them unanimously in favor of the consolidation; to which the stockholders representing and holding the other four hundred and ninety shares, who were absent, were opposed. It is true the bill assails the legality of the election of the new directors, and while the amendment to the bill alleges, that they claim to be directors and officers of the corporation, it also alleges that they procured themselves to be elected for the purpose of transferring the franchises, and

consolidating it with the other corporation. The case made by the bill is that of a shareholder seeking preventive remedy against the wrongful and illegal acts of a majority, done in a convention of stockholders, which would operate a virtual dissolution of the corporation, and the formation of a new one—to impair the obligation of the contract of corporation. A stockholder may bring suit, where the wrong complained of is unauthorized by the charter, or by the general law, and is committed by a majority in excess of their powers. The courts will provide a remedy against any violation of, or departure from the chartered purposes of a corporation, which is a direct injury to the individual shareholder.

In *Dodge v. Woolsey*, 18 How. 331, it is said : "It is now no longer doubted, either in England or the United States, that courts of equity, in both, have a jurisdiction over corporations, at the instance of one or more of their members, to apply preventive remedies by injunction, to restrain those who administer them from doing acts which would amount to a violation of charters, or to prevent any misapplication of their capital or profits, which might result in lessening the dividends of stockholders, or the value of their shares, as either may be protected by the franchises of a corporation, if the acts intended to be done create what in the law is denominated a breach of trust. And the jurisdiction extends to inquire into, and to enjoin, as the case may require that to be done, any proceedings by individuals, in whatever character they may profess to act, if the subject of complaint is an imputed violation of a corporate franchise, or the denial of a right growing out of it, for which there is not an adequate remedy at law." The principles of this case were approved, as explained, in the subsequent case of *Hawes v. Oakland*, 104 U. S. 450; in which MILLER, J., speaking of the powers of a court of equity in respect to controversies growing out of the relations between the stockholder and the corporation, tersely observes : "The exercise of this power, in protecting the stockholder against the frauds of the governing body of directors or trustees, and in preventing their exercise, in the name of the corporation, of powers which are outside of their charters, or articles of association, has been frequent, and is most beneficial, and is undisputed. These are real contests, however, between the stockholders and the corporation of which he is member." When the injury is to the shareholder individually, or there is a real contest between him and the corporation, growing out of the acts of a majority of the stockholders in convention, and in excess

[Nathan v. Tompkins.]

of their powers, express or implied, he may maintain a suit to prevent the wrong, without the vain and useless ceremony of attempting to induce the same majority to sue themselves. A dissenting stockholder may, under such circumstances, enjoin an unauthorized consolidation.—*Bliss v. Anderson*, 31 Ala. 621; *Elkins v. Cam. & At. R. R. Co.*, 36 N. J. Eq. 467; 1 Morawetz on Cor. § 252; Cook on Stock and Stockh., § 671.

3. It is further insisted, that the injunction was properly dissolved on the statements of the answers; that after the resolutions to consolidate were adopted, the defendants examined into the question of the legality of the proceedings, and determined, in view of the fact that a minority of the stockholders objected, or rather their assent had not been obtained, that consolidation would be abandoned, and had been abandoned at the time the original bill was filed, of which complainant would have been regularly notified, and of which he could have informed himself by inquiry of defendants. The answers do not aver that the resolutions have been rescinded, or any attempt made to rescind them, or any official declaration of the abandonment. The resolutions remain in force on the minutes, so far as the majority could impart vitality. In view of the character of the resolutions—that the consolidation " do *now* take place," and be fully carried into effect—a secret, uncommunicated intention to abandon, resting in the minds of the majority as individuals, does not meet the requirements of equity. There should be an open, authoritative expression. But, apart from these considerations, the fact of abandonment is affirmative matter, set up in avoidance of admitted allegations of the bill; and not being responsive to any averment, can not, under our rulings, be considered on the motion to dissolve the injunction.—*Farris v. Houston*, 78 Ala. 250; *Jones v. Ewing*, 56 Ala. 360.

4. While a court of equity, if such be the mere purpose, will not inquire into the legality of an election of directors, nor exercise jurisdiction to remove an officer of a corporation from an office of which he is in actual possession; yet, when the court has rightfully taken jurisdiction for one purpose, and the question of the legality of the election, or whether a certain person holds such office, incidentally and collaterally arises in the suit, it will inquire into, and decide it, as it would any other question that may arise.—*Johnston v. Jones*, 23 N. J. Eq. 216. The manifest purpose of changing the by-laws, so as to fix the time of the annual meeting of the stockholders in May, 1887, instead of April, 1888, nearly a year earlier, and of

calling the meeting of May 10, 1887, was to obtain control of the corporation by electing a directory favorable to consolidation, though the intention to consolidate may have been subsequently abandoned. Under these circumstances, and in view of the attempted consolidation, the legality of their election incidentally arises in a suit of which the court has jurisdiction, and may properly be inquired into.

5. The corporation was incorporated and organized in January, 1887. At the first meeting of the stockholders, seven directors were elected; and by the by-laws, the third Tuesday in April, 1888, was fixed as the time of the annual meeting of the stockholders, and of the annual election of directors. At the stockholders' meeting held May 10, 1887, seven new directors were elected, who elected from their own number a president, secretary, and treasurer. The argument, by which it is sought to sustain the legality and validity of this election, is, that four of the directors first elected sold and transferred their stock in April preceding, and therefore became disqualified to longer act as directors, and the directory as originally constituted ceased to exist; that the remaining directors had no authority to transact any business, and that the power to fill the vacancies was vested alone in the stockholders. Section 1923 of the Code, being a section of the article providing for and regulating the incorporation of street railroad companies, provides, that the persons named in the certificate of incorporation, or any three of them, may give notice "for the stockholders to meet, at such time and place as they may designate, for the purpose of choosing seven directors, who shall continue in office until the time fixed for the annual election, and until their successors are elected and qualified." And section 1925 declares,"a new election shall be annually held for directors, at such time and place as the stockholders at their first meeting shall determine, or as the by-laws of the corporation may require; and the directors chosen at any meeting shall, as soon thereafter as may be consistent, choose one of their number to be president, and shall appoint a secretary and treasurer of the corporation. The directors, before entering on their duties, shall each take an oath, or affirmation, faithfully to discharge their duties."

The sale and transfer of their stock did not operate, *ipso facto*, to remove the four directors from office, though it may have afforded sufficient cause for removal; and certainly did not remove the remaining directors, who had not parted with their stock, nor constitute a cause therefor. Without proceedings looking to removal, or even declaring vacancies,

the m ajority of the stockholders elected an entire new board, thus indirectly superseding *all* the directors first elected. The statutes fix the term of office of the directors, contemplating only annual elections. The term of office of those first elected continues until the time fixed for the annual election, which was the third Tuesday in April, 1888. No power is conferred by the charter, or by statute, and there is no inherent power, to remove directors, who are elected for a definite period fixed by statute, before the expiration of that period, whatever may be the incidental power to remove for cause.—*Imperial Hotel Co. v. Hampton*, L. R. 23 Chan. Div. 1; Cook on Stock and Stockh. § 627. All the powers and authority of the corporation, except the power to increase the capital stock, are conferred by statute on the board of directors.—Code of 1876, § 1928. They are more ₊than mere agents subject to removal at pleasure. They really constitute the governing body ; and the charter of incorporation, the statutes and the by-laws, are a contract between the shareholders, as to their election and the duration of their term of office. A majority of the board of directors can not abrogate, nor extend their term of office, by merely changing the time of the annual meeting of the stockholders. If they have such power, they could cause quarterly or monthly elections, by successive amendments of the by-laws changing the time of the annual meeting.—*Elkins v. Cam. & At. R. R. Co., supra.* A different question might have been presented, if the stockholders had merely declared and filled vacancies ; but no means are furnished, from which to determine what four of the new directors, if any specially, were elected to fill vacancies. In such case, the entire election must be declared invalid. Having so determined, and inasmuch as they claim the right to the offices, by virtue of such election, not only as directors, but also as president, secretary, treasurer, and superintendent, with authority to manage its affairs ; and as it appears that they are interested in both companies, whose interests are necessarily rival and antagonistic to some extent, the court will restrain them from interfering as such officers with the control and management of the affairs and property of the corporation.

The case is not in a condition to enable us to intelligently and satisfactorily decide the incidental contestation in respect to the stock purchased by Tompkins from Scott, growing out of the agreement between complainant, Scott and others, to put their stock in the hands of trustees to vote. The agreement, which is before us, expressly provides, that either party may sell his stock, subject to the trust. The

complaint is, that Scott sold without giving the other parties the refusal, as required by the contract. But the bill contains no offer, nor an averment of willingness, to take the stock at the price for which it was sold. On motion to dissolve the injunction on bill and answer, it would be improper to pass on the rights of the parties, involving a consideration of facts and circumstances the proper subject of proof. The validity and effect of the agreement only come up collaterally on this motion, as bearing on the right of Tompkins to vote the stock; which, as the bill now stands, and by reason of our conclusion as to the validity of the proceedings of the meeting of May 10, 1887, ceases to be a practical, or material question for the purposes of this suit. We see no sufficient reason, why the injunction restraining him from selling the stock should be longer continued, as it does not appear that, under the circumstances, any injury will result to complainant.

For like reasons, we have deemed it unnecessary to express any opinion as to the regularity of the meeting of the directors on April 27, 1887. Though the bill may, in some respects, require amendment, we have regarded all amendable defects as cured.

The decree of the chancellor is affirmed, so far as it dissolves the injunction restraining Tompkins from selling the stock acquired from Scott, and reversed in all other respects; and the injunction is reinstated; except as to the sale of the stock.