## Tompkins *v.* Compton.

1. Under the laws of Alabama, in the absence of express statutory authority, there can be no consolidation of the stock of one corporation with that of another so as to create a consolidated company composed of the stockholders of both corporations; and to attempt such a scheme over the objection or anticipated objection of a minority of the stockholders in either corporation, is illegal and contrary to public policy.

2. Where, in contemplation of such an illegal scheme and for the purpose of carrying it into effect, some of the stockholders in one corporation sell their stock to some of those in the other, and are to be paid therefor in part by a transfer of stock of the consolidated company when such company shall be formed, the sale is tainted with the element of illegality on the part of the sellers as well as the

buyers; and if the consolidated company is not formed and never issues any stock, and because the buyers are thereby unable to deliver the stock they execute to the sellers their notes or bonds promising to pay a sum of money in lieu of making a delivery of the stock, these notes are tainted with the illegality which attached to the contract of sale, and for that reason are not collectible. The legal principle applicable to the case is, that where both parties to an illegal contract are to share in the fruits thereof, and the contract fails to bear some of the anticipated fruits, an undertaking, by way of compromise, of one of the parties to compensate the other for his disappointment, is illegal and therefore void.

3. One who purchases promissory notes or bonds founded upon a consideration illegal and contrary to public policy, with full knowledge of the facts, takes them subject to all the defences which might be urged against the original payees.

4. The court erred in striking the defendant's special pleas, in so far as they rested on the element of illegality.

October 24, 1893.

Complaint on notes. Before Judge WESTMORELAND. City court of Atlanta. March term, 1893.

A. C. KING and W. B. FARLEY, for plaintiff in error. GOODWIN & WESTMORELAND, *contra.*

SIMMONS, Justice.

Tompkins was sued by Compton upon two promissory notes executed by Tompkins and Woodson at Sheffield, Alabama, May 28th, 1888, one payable to Compton or order, the other payable to Graves or order and indorsed by Graves to Compton. The defendant filed special pleas, setting up, among other grounds of defence, that the consideration of the notes sued on was illegal. A general demurrer to these pleas was sustained, and the defendant excepted.

We think the pleas contain a good defence, in so far as they rest upon the element of illegality. It appears from the allegations therein, that the defendant was president of the Sheffield Street Railway Company, a corporation in Alabama, and that the plaintiff and Graves were stockholders of the Sheffield & Tuscumbia Street Railway Company, a competing corporation of

the same State.   The defendant and other stockholders
of the first named company, among whom was Wood-
son, in order to bring about a consolidation of the two
companies, negotiated with McMillan, the president of
the other company, and his associates, among whom
were the plaintiff and Graves, for the purchase of their
stock in that company, so that the defendant and his
associates might own and control a majority of the stock
in both companies, supposing that thereby they would
be enabled to consolidate the two railway lines over the
objection of the minority stockholders, who were known
to be opposed to the scheme.   The plaintiff and Graves,
as well as McMillan, knew of and sympathized with the
scheme for consolidation and the manner in which it
was proposed to carry it out, which was by voting the
consolidation and then electing officers who were favor-
able to the interests of the Sheffield Street Railway and
the East Sheffield Land Company, as against the inter-
ests of the minority stockholders of the Sheffield &
Tuscumbia Street Railway Company.   In furtherance
of this undertaking, McMillan and his associates, in-
cluding the plaintiff and Graves, sold their stock in
the last named company to the defendant and his
associates for a certain amount in cash and one hundred
shares of stock "in the consolidated street railway
company to be furnished by the consolidation" of these
railway companies, the terms of the sale being embodied
in a written contract, a copy of which was annexed to
the pleadings.   The main design and purpose of the
consolidation, it was alleged, was to benefit the prop-
erty of the East Sheffield Land Company and get rid
of a rival street railway line.   But, though all the par-
ties mentioned endeavored to bring it about, the con-
solidation fell through because of the want of power
under the laws of Alabama for a majority of share-
holders to effect the same over the active objection of

the minority stockholders in the Sheffield & Tuscumbia Street Railway Company, who carried the matter into the courts and obtained a decision of the Supreme Court of Alabama annulling and setting aside the consolidation (Nathan v. Tompkins, 82 Ala. 437, 2 So. Rep. 747); and so no stock was ever issued by the contemplated consolidated company. The notes sued on, it is alleged, "were given in adjustment of an illegal demand for the one hundred shares of contemplated consolidated stock, or its estimated value, which stock never existed because the street railways were never and could not be legally consolidated, . . said companies having no power so to act, under the law under which the same were incorporated." Code of Alabama of 1876, section 2021. It is further alleged that the note to Graves upon which the plaintiff sues in this action, was indorsed by Graves to the plaintiff after it had become due, and was taken by the plaintiff with full knowledge of the facts and circumstances under which it was given by the defendant.

Under the laws of Alabama, in the absence of express statutory authority, there can be no consolidation of the stock of one corporation with that of another so as to create a consolidated company composed of the stockholders of both corporations; and to attempt such a scheme over the objection or anticipated objection of a minority of the stockholders in either corporation is illegal and contrary to public policy. (See Nathan v. Tompkins, supra; Memphis & Charleston R. Co. v. Woods, 7 Lawy. Rep. Annot. 605.) On this point there was no contest in the argument before us; but it was contended that the illegality of the attempted consolidation did not affect the consideration of the notes, (1) because the parties to whom the notes were given had a right to sell their stock and to be paid for it, no matter what use the purchasers may have intended to

make of it; and (2) because the intended consolidation had been abandoned before the notes were made, and they were given under a new contract, distinct from the original contract of sale.

In the State in which this contract was made, it has been held that a sale is rendered illegal on the part of the seller, as well as on the part of the buyer, if the seller knows that the buyer's purpose is to apply the subject of the sale to an unlawful use.   Milner *v.* Patton, 49 Ala. 423 (overruling Thedford *v.* McClintock, 47 Ala. 647); Oxford Iron Co. *v.* Spradley, 51 Ala. 175; Ware *v.* Jones, 61 Ala. 293.   " Mere knowledge of the illegal purpose," says Brickell, C. J., in the case first cited, " is all the law requires, to pronounce judgment against the contract.   This is the rigid rule of the common law, from which there should be no departure."
And so Mr. Benjamin states the law to be, in his work on Sales, where it is said : " The sale of a thing in itself an innocent and proper article of commerce, is void when the seller sells it knowing that it is intended to be used for an immoral or illegal purpose.   In several of the earlier cases, something more than this mere knowledge was held necessary, and evidence was required of an intention on the vendor's part to aid in the illegal purpose, or profit by the immoral act.   The later decisions overrule this doctrine."   (See Bennett's edition, 1892, §892 *et seq.*)   In the notes to that work, however, in the edition referred to, it is said (p. 504), that " generally the vendor of an article which may be lawfully sold· or used for some purpose, can recover the price although it be bought to use for some unlawful purpose, unless the vendor *participated* in and intended to aid in carrying out that unlawful use.   Mere knowledge on his part that the vendee intended and expected to· use it for an unlawful purpose (if the two elements can be distinguished from each other) will not avoid

the sale." (See cases cited; also Tiedeman on Sales, §294, p. 476, and citations.)

In either view of the law it is clear that the sale now under consideration was illegal as to all parties to the contract. According to the pleas, the parties who sold the stock not only knew of the intended consolidation, but by the terms of the contract were to share in the fruits of it. It is equally clear, if the notes were given, as the pleas allege, in adjustment of a demand for the one hundred shares of "contemplated consolidated stock," or its estimated value, that the notes are tainted with the illegality which attached to the original contract. "A contract executed in consideration of a previous illegal one or in compromise of differences growing out of it, is like that whereon it rests, illegal and incapable of being enforced." Bishop on Contracts, §488; Greenhood on Public Policy, rule 10, p. 8; Wilson v. Bozeman, 48 Ala. 71. If the allegation referred to is true, the giving of the notes amounted simply to an undertaking by one of the parties to an illegal contract, in the fruits of which both parties were to share and which had failed to bear some of the anticipated fruits, to compensate the other party for his disappointment.

There is no merit in the contention that the defendant cannot defend by setting up his own unlawful conduct. See *Howell* v. *Fountain*, 3 *Ga.* 182; *Carey* v. *Smith*, 11 *Ga.* 547; *Bugg* v. *Towner*, 41 *Ga.* 318; *Harrison* v. *Hatcher*, 44 *Ga.* 642 ; *Heineman* v. *Newman*, 55 *Ga.* 262. In the case of *Bugg* v. *Towner, supra,* it is said: "It is objected that the defendant should not be heard to set up the illegality of the transaction for his own benefit. The reply is, that courts sustain such a defense, not for the sake of the defendant, but upon general principles of public policy. In Holman v. Johnson, Cowper, 343, Lord Mansfield uses the following language, which has heretofore been approved and adopted by this court as a

correct statement of the rule on this subject: 'The objection that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed, but it is founded on general principles of policy, which the defendant has the advantage of, contrary to real justice as between him and the plaintiff, by accident, if I may so say   The principle of public policy is this: *ex dolo malo non oritur actio.* No court will lend its aid to a man upon an illegal or an immoral act. If from the plaintiff's own statement, or otherwise, the cause of action appears to arise *ex turpi causa*, or the transgression of a positive law of this country, then the courts say he has no right to be assisted. It is upon that ground the court goes, not for the sake of the defendant, but because it will not lend its aid to such a plaintiff. So if the plaintiff and defendant should change sides and the defendant were to bring his action against the plaintiff, the latter would then have the advantage of it; for where both are equally at fault, *potior est conditio defendentis.*'"

.The note to Graves having been taken by the plaintiff with full knowledge of the facts, it was taken subject to all the defences which might be urged against the original payee.          *Judgment reversed.*