## GARRISON *v.* BURNS.

A court of equity will not lend its aid to one seeking the rescis-
    sion of an executed contract, when it affirmatively appears,
    from the evidence introduced by the plaintiff in making out
    his case, that one of the purposes which he and the defendant
    both had in view in making the contract necessarily involved
    the violation of a criminal statute and a mutual intention on
    their part to defraud and deprive a city of the revenue to
    which it was entitled as a license fee for conducting a retail
    liquor business, the sale of which constituted in part the
    consideration of the contract in question.
    August 18, 1896.

Equitable petition.    Before Judge Hardeman.    Bibb
superior court.    November term, 1895.

*James A. Thomas*, for plaintiff in error.
*W. J. Grace* and *G. S. Jones*, contra.

LUMPKIN, Justice.

This was an equitable petition, the grounds of which need
not be stated, brought by James Burns against V. A.
Garrison to rescind a contract and recover certain person-
alty, consisting largely of bar-room fixtures and appurte-
nances.    There was a verdict for the plaintiff, and Garri-
son made a motion for a new trial, to the overruling of
which he excepted.    The following facts affirmatively ap-
pear from the evidence introduced by the plaintiff:    Be-
fore the sale to Garrison, Burns had been engaged in the
retail liquor business in the city of Macon.    For this pur-

pose he had taken out a license in the name of "James.
Burns & Co.," though there was in fact no partnership, and
no person interested in the business as the "Co." Liquor·
licenses not being transferable, Burns had this particular
one made out as above stated " in order that it might be·
used by any one to whom he should sell his business."
This business was included in the sale to Garrison. Burns·
falsely told the city inspector that Garrison was a member
of the firm of "James Burns & Co.," so as to enable Gar-
rison to go on with the business. He and Garrison had an.
agreement to that effect, both knowing that the license·
could not be lawfully assigned.

It will thus be seen that the parties to the contract under·
review necessarily contemplated and intended that there·
should be by one of them a violation of the statute which
makes it penal to sell spirituous liquors without a license,
and that there was a mutual intention on their part to·
defraud and deprive the city of the license fee it ought to
have received from Garrison when he began to sell liquors.
The license in the name of "James Burns & Co.," under·
which he did business, was, as to him, the same thing in law·
as no license at all; and upon a disclosure of the truth, would.
have afforded him no protection from a criminal prosecu-
tion. Both of these parties, therefore, in the making of
their contract, had in view two unlawful purposes, one·
of which was indictable, and the other both fraudulent and
contrary to public policy. All this came. to light at the·
instance of the plaintiff in making out his case, and the
question is: Will a court of equity—a court of conscience·
in which all suitors must appear with clean hands—grant
him the relief which he seeks?. By our decision we have·
ruled that this question should be answered in the negative.
The contract being illegal, in the sense that it involves.
both criminality and the violation of a sound public policy,
and the parties being *in pari delicto*, no court—and least.
of all a court of equity—will aid the plaintiff in getting

back what he parted with under the contract. If he was defrauded by his fellow wrong-doer in the manner alleged in his petition, he cannot look to a court of equity for relief. The principle which precludes a recovery upon an illegal contract of this kind applies not only where a party is seeking to enforce the contract, but also where, after it has become executed, he is seeking to repudiate or rescind it. A court will sometimes, in cases of this nature, grant relief where there is nothing to be done except to cancel an executory contract; but where the illegal contract has been fully executed, it will leave the parties where it finds them. The law governing the present case is well settled, and will be found stated in various decisions of this court. In an early case, *Adams* v. *Barrett*, 5 *Ga.* 404, in which the administrator of a person who had executed a deed to land upon an illegal consideration sought to enjoin an action of ejectment by the grantee, Judge Nisbet said: "Here a party, having executed his part of an illegal contract, invokes the aid of chancery to revoke that execution, and by annulling the contract to place him in the position which he occupied before he entered into it. The principle which governs this case is this—if a contract is in violation of law, or of public policy, and the parties to it are *in pari delicto*, and it is executed, neither a court of law nor of equity will interfere to relieve them, but will leave them where it finds them. I apprehend, that upon a careful review of the authorities, this rule will be found almost without an exception. Those cases which appear to be exceptions—cases where equity, with a view to public policy, will interpose to set aside securities founded upon illegal considerations, will be found to be cases where the contract either remains executory, or the parties are not *in pari delicto*. If the contract be executed and the parties are equal in crime, the conclusion of the law is that public policy is best promoted by non-intervention. . . Whether the contract be executed by the payment of money, or the

delivery of goods, or the delivery of securities, the principle is the same. He can never recover either back again." (Page 416.) "In cases where repudiation is allowed, the repudiation must be asked before the party has put himself without the repudiation limits by performing the contract." (Page 422.) These remarks of the eminent jurist whose language we have quoted are precisely applicable to the case now in hand, and, in our judgment, aptly express the law by which it is controlled. It has been held that it makes no difference whether the illegality of the transaction is made to appear by the plaintiff, or by the defendant. See *Howell* v. *Fountain*, 3 *Ga.* 182, where the following language of Lord Mansfield, in Holman *v.* Johnson, Cowp. 343, is approved as a correct expression of the law on this subject: "If from the plaintiff's own statement, *or otherwise*, the cause of action appears to arise *ex turpi causa*, or from the transgression of a positive law of this country, then the court says he has no right to be assisted." In this connection, consult also: *Bugg* v. *Towner*, 41 *Ga.* 318; *Heineman* v. *Newman*, 55 *Ga.* 262; *Tompkins* v. *Compton*, 93 *Ga.* 525.

It would seem that the general rule deducible from all the authorities is as stated in Clarke on Contracts, 491, viz: "that the court will not lend its aid to a party who, as the ground of his claim, must disclose an illegal transaction." We understand this to mean that whenever either party has to rely upon a contract which is in fact illegal, the other party may, in avoidance of it, show its illegality. The plaintiff in the present case does not, it is true, rely on the contract. On the contrary, he seeks to rescind it. But he had to bring it to light, and in making out his case disclose its real nature; and as it was an executed contract, this gave the defendant the right to invoke the rule that the court should leave them where it found them.

The cases of *Ingram* v. *Mitchell*, 30 *Ga.* 547, and *Clarke, Harrison & Co.* v. *Brown*, 77 *Ga.* 606, are not in

conflict with what is now decided. The decisions in those ·cases recognize the doctrine for which we are now contending. They also recognize the distinction to be made in applying this doctrine to executed and to executory contracts, and simply hold that an agent who receives money for his principal upon or for the purpose of making, in the latter's behalf, an illegal contract, cannot set up as a defense to an action against him for the money, the illegality of the contract. The former of these cases is very close to ·the line. The latter is obviously not out of harmony with the current of our decisions.

The plaintiff was not entitled to a recovery, and the judgment in his favor ought to have been set aside.

*Judgment reversed.*