## 2861. GLASS v. CHILDS.

It being undisputed that the note and the check sued upon were given in settlement for the original margin and profits in a gambling contract or speculation in cotton futures, the verdict for the defendant was right, and the court did not err in refusing a new trial, especially as the alleged newly discovered testimony tended only to further show that the dealings between the plaintiff and defendant were of a character forbidden by law. The aid of courts of justice can not be invoked to enforce alleged rights which depend upon contracts outlawed by sound public policy and good morals. The plaintiff having admitted upon the trial that the indebtedness he sought to recover was for money claimed by him as his share of a deal in cotton futures, in which the defendant and himself were to share jointly in the profits and loss, the verdict for the defendant was demanded, and, if there were errors in the trial, they were immaterial.

DECIDED JULY 25, 1911.

Complaint; from city court of Covington—Judge Whaley. July 11, 1910.

*C. C. King,* for plaintiff.

*Middlebrook, Rogers & Knox,* for defendant.

RUSSELL, J. Glass brought suit against Childs upon a note and a check. Childs admitted the execution of both instruments. He admitted a refusal to pay the check, and that the bank upon which the check was drawn had not paid it upon presentation. He set up two defenses: One was that the note and the check were without consideration; that at the time he gave the note he had forgotten, or was uncertain, whether he had paid the plaintiff what he owed him, and, not being willing to swear that he had paid him, he executed the papers in question, but thereafter he found a bank check which he had given to Glass, and which had been paid by the bank to Glass, which antedated the note and check sued upon, and which represented the same transaction. Upon that ground he claimed that his debt to Glass had actually been paid before he gave the note and the check. It is alleged, however, in this plea, that "in the fall or winter of 1905 plaintiff asked defendant to join him in buying 100 bales of cotton futures, which defendant did, plaintiff and defendant each one putting up $100 as a margin to cover loss on said futures, and the contract was taken in defendant's name, and the note and draft or check sued on were given the plaintiff for his $100 so advanced as a margin on said cotton-future con-

tract, and for his part of the profits thereon, and the interest on the money up to the time of giving said note," and for this reason the defendant pleaded that both the note and the check were based on an illegal contract and speculation scheme, and can not be enforced or collected out of him, and that the consideration of the note is illegal, void, and contrary to public policy, because it is a part of said illegal contract. It will thus be observed that each of the pleas in fact set up a total failure of consideration —the one because the debt was alleged to have been paid by mistake before the note was given; the other because the consideration was not recognized or tolerated by law.

There was conflict in the evidence with regard to the check said to be given in settlement of the difference between the plaintiff and the defendant, but there was no conflict as to the nature of the dealings in which they were engaged with each other, and no dispute that if there was any dividend due the defendant to the plaintiff it was for the plaintiff's original margin and his share of profits and deals in cotton futures where the collections were made by the defendant. The plaintiff himself admitted in his testimony that the purchase of 200 bales of cotton futures, in two purchases and two sales of 100 bales each, was the only transaction they ever had, and that each purchase was made in the name of the defendant; one half of the purchase being for himself and one half for the defendant, the defendant receiving all the money for both sales—both the margin put up and the profits, though he insisted that the defendant had never paid anything. The defendant, agreeing with the plaintiff as to the nature of the transaction upon which the alleged indebtedness depended, simply urged that he had paid the debt before he gave the note and the check through mistake, by means of a check for $245, which he had given to the plaintiff, and which he introduced in evidence as corroborative of his statement.

The finding in favor of the defendant upon the plea of failure of consideration by anterior payment of the indebtedness was supported by some evidence, and the defense based upon the illegality or immorality of the consideration was absolutely demanded by the evidence, because the plaintiff himself admitted this defense to be true. We find no error in the ruling upon the admissibility of testimony, nor in the charge of the court. But even if there

were errors, they would be immaterial, because the law will not lend its aid to secure for either party an advantage to which he might be entitled under a contract which is abhorrent to sound public policy and good morals. No principle of jurisprudence is better settled than this. An extensive citation of authority is unnecessary. We need only to refer to the cases of *Watkins* v. *Nugen,* 118 *Ga.* 373 (45 S. E. 262), 118 *Ga.* 378 (45 S. E. 260), *Tompkins* v. *Compton,* 93 *Ga.* 525 (21 S. E. 79), and cases cited, as well as *Hentz* v. *Booz,* 8 *Ga. App.* 577 (70 S. E. 108). It is a general rule of law that where it is plainly disclosed that the parties are themselves engaged in an undertaking which the law can not decently afford to touch, the law will leave them where it finds them. A court of justice will not lend its aid to the enforcement of any contract, the making of which is prohibited, nor to the enforcement of anything which is necessary to complete the accomplishment of an unlawful purpose. If A. and B. make a sale of a forged paper, and the purchaser pays the proceeds to A., the aid of a court of law could not be invoked to force A. to pay to B. his part of the proceeds of the sale of the forged paper, and it would not give the court any concern if B. were successful in defrauding A. by withholding from his companion in guilt his share of the fruits of the iniquity. We grant that in the instance we have suggested the degree of moral obloquy would be far greater than in a case where the parties were simply engaged in gambling in cotton futures; but the principle is the same so far as the courts are concerned. Where an act which from beginning to end is contrary to public policy is incomplete, and something remains to be done to complete it according to the original undertaking of the parties thereto, the courts can not afford to assist in the completion of the illegal act.

One of the grounds of the motion for a new trial depended upon the fact that the plaintiff since the trial had found a check for $100 which antedated the check given by the defendant and upon which the defendant predicated his claim that he had paid the debt. For the reasons we have stated, it was not error for the trial judge to disregard the newly discovered evidence, because it only tended to show more clearly the nature of the transaction in which the parties to the case engaged. But, aside from this, the testimony is of no probative value, for it is merely cumulative

of the testimony of the plaintiff and impeaching to the testimony of the defendant, and, furthermore, the plaintiff himself swore upon the trial that the first time they bought cotton futures together each party paid $100 margin, and the check which has been found does nothing more than sustain that statement. It would not illustrate anything as to the payment of the claim by the defendant, because it is not really inconsistent with the defendant's contention. 　　.　　*Judgment affirmed.*