### 5692. McANDREW *v.* TAYLOR.

1. A court of justice will not lend its aid to the enforcement of any contract the making of which is prohibited, nor to the enforcement of anything necessary to complete the accomplishment of an unlawful purpose. "If the contract is executed it will be left to stand; if it be executory neither party can enforce it."
2. There was no error in overruling the demurrer to the amendment to the defendant's answer, which set up that the contract upon which the plaintiff relied was contra bonos mores; and the evidence demanded the verdict.

DECIDED DECEMBER 24, 1914.

Complaint; from city court of Macon—Judge Hodges. March 26, 1914.

*Hardeman, Jones, Park & Johnston,* for plaintiff.

*Nottingham & Nottingham,* for defendant.

Russell, C. J. W. E. McAndrew sued Mallory H. Taylor in the city court of Macon upon the following contract: "Georgia, Bibb county. This agreement made and entered into this 18th day of May, 1905, between Mallory H. Taylor and W. E. McAndrew, witnesseth: That whereas Mallory H. Taylor has this day purchased from W. E. McAndrew the sixty certain shares of the capital stock of 'McAndrew & Taylor,' a corporation, the said McAndrew agrees, in consideration to such purchase, that he will, out of the moneys paid to him this day for said stock by Mallory H. Taylor, pay off, satisfy, and discharge all his personal debts he may be due to the debtors of said corporation or make arrangements thereof so that the corporation will not be delayed in the collection of debts due to it. The said Mallory H. Taylor, on his part, that as a part of the consideration of the purchase price of said shares of stock this day received from said W. E. McAndrew, that he, Mallory H. Taylor, does hereby agree to assume the payments of certain notes held by the Commercial and Savings Bank on which said McAndrew is endorser, the said notes being made by said corporation. The said Taylor agrees to take up said notes with said bank and the said McAndrew shall not be liable in any way upon the same. The said Taylor further agrees that as there is now in the American National Bank of this city a balance of $342.01 in the name of Phillips & Jones, which sum McAndrew & Taylor claim to own, that said Taylor, as soon as the same is collected by him or by the corporation, will pay over one half of the sum received from said bank to the said W. E. McAndrew. The said McAndrew's title and interest, one half of the said sum, being recognized by the said Taylor, and the said McAndrew recognizing the said Taylor and his son Ray's interest in the other half. Signed, sealed and delivered in duplicate this 18th day of May, 1905. W. E. McAndrew (L. S.) Mallory H. Taylor (L. S.)." At the trial the defendant offered an amendment to his answer, as follows: "At the time of making contract sued on, defendant was an officer and director of the corporation of McAndrew & Taylor, and a large stockholder therein; that plaintiff, as an officer and man-

ager, was exercising general supervision over its business; that both plaintiff and defendant were members of its board of directors; that said corporation was heavily indebted and financially embarrassed; was in fact insolvent, being ultimately forced to make compromise with its creditors; that these facts were well known to plaintiff, who was general manager of said corporation and a stockholder in same; that the aggregate holdings of plaintiff and defendant constituted a majority of said corporate capital stock; that when said fund (half of which is now sued for) was collected from said bank, defendant could not, in law or good conscience, disregard his official and fiduciary [relation] to said corporation and its creditors by paying over to plaintiff said one half of said collected fund; that in the insolvent condition of said corporation (said insolvency existent at the time of the making of contract sued on, as well as at the time of said collection) the execution of said attempted division of said fund would have been both a legal and a moral fraud upon the rights of said corporate creditors, as well as its stockholders in general; and therefore said contract was illegal and void." A demurrer to this plea was overruled, and evidence was introduced in support of the plea; and at the conclusion of the evidence introduced by the defendant, the plaintiff offering no evidence, the court, on motion directed a verdict for the defendant.

There was no error in overruling the demurrer to the defendant's plea; and the action of the court in directing the verdict was harmless to the plaintiff, because, under no view of the evidence was he entitled to recover. "A court of justice will not lend its aid to the enforcement of any contract the making of which is prohibited, nor to the enforcement of anything which is necessary to complete the accomplishment of an unlawful purpose." *Glass* v. *Childs,* 9 *Ga. App.* 520, 522 (71 S. E. 920). "It is as well settled as any proposition can be, that neither a court of law nor a court of equity will lend its aid to either party to a contract founded upon an illegal or immoral consideration. If the contract is executed it will be left to stand; if it be executory neither party can enforce it. *Howell* v. *Fountain,* 3 *Ga.* 176 [46 Am. D. 415]; *Adams* v. *Barrett,* 5 *Ga.* 404; *Peacock* v. *Terry,* 9 *Ga.* 137, 147; *White* v. *Crew,* 16 *Ga.* 416; *Ralston* v. *Boady,* 20 *Ga.* 449; *Bailey* v. *Milner,* 35 *Ga.* 330 [Fed. Cas. 740]; *Bugg* v. *Towner,* 41 *Ga.* 315; *Thompson* v. *Cummings,* 68 *Ga.* 125." *Watkins* v. *Nugen,* 118 *Ga.* 373 (45 S. E. 263).

The concluding provision of the contract between McAndrew and Taylor, which is clearly apart from the consideration of Taylor's purchase of McAndrew's stock, stipulates that "there is now in the American National Bank of this city a balance of $342.01 in the name of Phillips & Jones, *which sum McAndrew & Taylor claim to own,* that said Taylor, as soon as the same is collected by him or by the corporation, will pay over one half of the sum received from said bank to the said McAndrew. The said McAndrew's title and interest, one half of the said sum, being recognized by the said Taylor, and the said McAndrew recognizing the said Taylor and his son Ray's interest in the other half." The undisputed evidence shows that "McAndrew & Taylor" and "Phillips & Jones" were a corporation, the name McAndrew & Taylor being simply a new style of the same corporation, adopted in lieu of the corporate name Phillips & Jones. Whatever interest the plaintiff and the defendant may have had in the assets of the corporation known as Phillips & Jones they had by reason of being stockholders in the corporation under the new name of McAndrew & Taylor. The evidence of Hillyer, the cashier of the bank, shows without question that the deposit was originally made in behalf of the corporation Phillips & Jones. The statement in the contract, "which sum McAndrew & Taylor claim to own" is an admission by both of the parties to the contract that the deposit was a corporate asset, for, according to the record, there was no partnership known as McAndrew & Taylor, and there was a corporation of that name, which at the time the deposit was made was known as Phillips & Jones. According to the undisputed evidence, there was never a time prior to the execution of the contract when the fund in the bank was not the property of the same corporation, though it is true that it changed its name. It appears, from the evidence, that McAndrew owned 60 shares of the stock in the corporation, Taylor 50 shares, and Taylor's son 10 shares; and as it was admitted in the contract that McAndrew's title and interest in the sum "which McAndrew & Taylor claim to own" was one half, and as he owned 60 shares, it may be assumed that the total number of shares in the corporation of McAndrew & Taylor was 120, though it does not affirmatively appear that there were not more stockholders or that the total number of shares did not exceed 120. As disclosed by the record the contract evidenced an attempt on the part of two stock-

holders, one acting in behalf of himself and the other in behalf of himself and his son, to divide between themselves a fund consisting of assets of a corporation; and while their reasons for doing this may have been satisfactory to themselves, such a division of corporate assets would have been a fraud on existing creditors of the corporation, as well as on the other stockholders (if there were other stockholders). Not only does the contract itself recite the existence of corporate obligations to which these assets were subject, but it is uncontradicted that the corporation was in fact insolvent and compromised its just obligations at 40 per cent. of their face value. Any agreement between one of several stockholders and a retiring stockholder to divide the corporate assets (such assets being trust funds, held first for the benefit of corporate creditors, and ultimately for the benefit of all the stockholders) is illegal, null, and void—contra bonos mores and contrary to public policy. The agreement to divide these assets of the corporation was illegal and fraudulent as to creditors, and it is immaterial what consideration influenced the illegal act or whether the act itself was malum prohibitum or malum in se. *Penitentiary Co.* v. *Rountree,* 113 *Ga.* 799-801 (39 S. E. 508).

As was said by Judge Nisbet in the early case of *Adams* v. *Barrett,* 5 *Ga.* 404, 424, it is a general rule that "where parties to a contract illegal or immoral are in pari delicto, courts will not interpose, but leave the parties where they find them, according to the maxim in pari delicto potior est conditio defendentis et possidentis." Judge Nisbet in the same case quotes from the opinion delivered by Mr. Justice Johnson, in the early South Carolina case of Denton *v.* English, 2 Nott & McC. 581 (10 Am. D. 638), as follows: "After a careful research I have not been able to find a single exception, in cases arising on common-law principles, to the general rule that when parties are in pari delicto, melior est conditio possidentis. And no possible case occurs to my mind which would constitute an exception." Many early English cases are cited by Judge Nisbet, supra, in support of this rule. In Clark on Contracts, 491, the general rule deducible from the authorities is stated to be that "A court will not lend its aid to a party who, as the ground of his claim, must disclose an illegal transaction." And this means that whenever either party has to rely upon a contract which is in fact illegal, the other party may, in avoidance of it,

show its illegality. *Garrison* v. *Burns,* 98 *Ga.* 762, 765 (26 S. E. 471). The plaintiff in the present case not only relies upon the contract, but he had to bring it to light as the basis of his suit, and the evidence illustrated and disclosed its real nature and effect to be an attempt on the part of two shareholders in an insolvent corporation to divide, for their own personal benefit, assets liable to the claims of creditors. This gave the defendant the right to invoke the rule that the court should leave them where it found them. "In Simpson *v.* Bloss, 7 Taunt. 246 (17 Rev. Rep. 509), it was said that 'The test whether a demand connected with an illegal transaction is capable of being enforced at law is whether the plaintiff requires any aid from the illegal transaction to establish his case.' In *Ingram* v. *Mitchell,* 30 *Ga.* 547, it was said, that whenever the plaintiff can make out his case without invoking the illegal contract to his aid, he is entitled to recover. And see *Clarke* v. *Brown,* 77 *Ga.* 606 [4 Am. St. R. 98]; *Howell* v. *Fountain,* 3 *Ga.* 182 [46 Am. D. 415]; *Adams* v. *Barrett,* 5 *Ga.* 404; *Garrison* v. *Burns,* 98 *Ga.* 762 [26 S. E. 471]. But Lord Mansfield said, 'If, from the plaintiff's own statement or otherwise, the cause of action appears to arise ex turpi causa, or the transgression of a positive law of this country, then the court says he has no right to be assisted.' Holman *v.* Johnson, Cowp. 343, *Holleman* v. *Bradley Fertilizer Co.,* 106 *Ga.* 156 [32 S. E. 83]; *Tompkins* v. *Compton,* 93 *Ga.* 520 [21 S. E. 79]. The illegality of a contract which is sought to be enforced, or in respect to which relief is prayed, may appear from the plaintiff's case or may be set up by way of defense. *Bugg* v. *Towner,* 41 *Ga.* 315." *Sewell* v. *Norris,* 128 *Ga.* 828 (58 S. E. 639, 13 L. R. A. (N. S.) 1118). We think that perhaps the contract in the present case itself discloses the illegal nature of the transaction, but even if this is not true, certainly the undisputed testimony plainly evidenced such an attempt to divert corporate assets as is contrary to sound public policy and in violation of law.

*Judgment affirmed. Broyles, J., not presiding.*