Mix *against* Peck and others.

The disability of a person under the care of an overseer being general, no necessity, of which the overseer is legally competent and able to judge, will make a contract valid, without his assent.

Therefore, where a person subject to an overseer, in the town of *C*, being imprisoned in another town in the same county, on a binding-over for a criminal offence, obtained bail and transferred personal property to such bail, as his security, without the assent of the overseer; it was held, that these circumstances were proper for the consideration of the overseer, and did not dispense with his assent to the transfer.

Where the person subject to an overseer, was, at the time of the appointment, in the custody of an officer in the town of *C*, upon process, by virtue of which he was about to be committed to prison in another town; it was held, that such person was then residing in *C*, and subject to the inspection of the select-men thereof, notwithstanding the custody of the officer.

Where the select-men, in the appointment of an overseer, found, that the subject was "spending his estate and likely to be reduced to want, and himself and family become chargeable to the town," without finding in terms, that he was *wasting*, or *likely to waste* his estate; it was held, that the appointment was in proper form, and that the causes assigned were sufficient.

Where the evidence adduced to prove the appointment of an overseer, was one of two original duplicates signed by the select-men, the other being put upon the sign-post; it was held, that this was competent evidence, superseding the necessity of a sworn copy.

Where the person subject to an overseer never submitted to the appointment, but appealed therefrom to the county court, and the select-men, thereupon, without a trial, revoked the appointment, and the overseer assented to a contract previously made; it was held, that such appeal, revocation and assent had no effect to validate such contract against an intervening attaching creditor.

This was an action of trespass *de bonis asportatis ;* tried at *New-Haven, January* term, 1839, before *Bissell,* J.

The plaintiff claimed title to the property in question, by virtue of a sale and delivery thereof to him, by *Herman Wooding,* the undisputed owner, on the 22nd of *September,* 1837. At this time, *Wooding,* as the plaintiff claimed and offered evidence to prove, was confined in the gaol in *New-Haven,* on a binding over, by a justice of the peace ; and the sale was made to indemnify and secure the plaintiff for becoming bail for him in the sum of 200 dollars ; his liberation being essential to his health.

The defendants claimed, that at the time of the pretended sale, *Wooding* was under the care of an overseer, duly appointed ; and they offered in evidence the appointment of

*Rufus Merriman*, as such overseer, in these words : " The subscribers, select-men of the town of *Cheshire*, having inspected and examined the conduct and management of the business of *Herman Wooding*, an inhabitant of said town, and residing therein, and finding, that by mismanagement and bad husbandry, he is spending his estate and likely to be reduced to want, and himself and family become chargeable to said town, we do hereby, this 28th day of *August*, 1837, constitute and appoint *Rufus Merriman* of said town overseer to said *Herman Wooding*, to advise, direct and order him in the management of his business, for the term of three years from the date hereof. *Cheshire, August* 28th, 1837." [Signed by the select-men.] The paper offered in evidence, as one of the select-men testified, was a duplicate, the other being placed on the sign-post in the town of *Cheshire*. To the admission of this evidence the plaintiff objected, on the ground that the paper was not an original or a sworn copy, and did not tend to prove any valid appointment of an overseer ; and also on the ground that it was wholly irrelevant, not affecting the validity of the sale to the plaintiff, that sale being in the necessary defence of *Wooding* upon a criminal prosecution, and for his personal liberty, and therefore, not a contract within the spirit or meaning of the law authorizing the appointment of overseers. The court overruled the objection and permitted the evidence to go to the jury.

It was proved and not denied, that the property in question was attached, as the estate of *Wooding*, on the 28th of *September*, 1837, by *William Peck*, one of the defendants, and was subsequently disposed of according to law.

The plaintiff then offered evidence to prove, that on the 1st of *January*, 1838, *Wooding* appealed from the appointment of overseer, to the county court ; and that the select-men thereupon, without a trial, revoked the appointment, and caused all the property of *Wooding*, then in the hands of the overseer, to be restored to him. To the admission of this evidence the defendants objected ; and the court excluded it.

The plaintiff then offered evidence to prove, that *Wooding* had never submitted to the overseer, but wholly refused so to do. To the admission of this evidence the defendants objected ; and the court excluded it.

The plaintiff then offered evidence to prove, that the over-

*New-Haven,*
*July, 1839.*

Mix
*v.*
.Peck.

seer did not know of the transfer of the property to the plaintiff, until after it was attached by *Peck,* on the 28th of *September,* 1837 ; and that after it came to his knowledge, he did not dissent from, but assented to it.   To the admission of this evidence the defendants objected ; and the court rejected all that part of it, which went to shew the assent of the overseer after the property had been attached by *Peck.*

The plaintiff further offered evidence to prove, that at the time when the appointment of overseer was made, *Wooding* was in the custody of the officer at *Cheshire,* upon the process, by virtue of which he was afterwards committed to prison ; and the plaintiff claimed, that the court should charge the jury, that these facts being proved, *Wooding* was not residing in *Cheshire* so as to be subject to said appointment.   The plaintiff further prayed the court to charge the jury, that if they should find, that it was fit and proper that *Wooding* should procure bail, and the plaintiff, in giving bail and taking security, acted from honest and humane motives, they ought to find it a transaction to which the overseer was in duty bound to assent ; and that it was valid in point of law.   The court did not charge the jury as claimed by the plaintiff, but left it to them to say whether, upon the facts proved, *Wooding* had become divested of the property, when the attachment of *Peck* was levied thereon.

The jury returned a verdict for the defendants ; and the plaintiff moved for a new trial.

*Mix,* in support of the motion, contended, 1. That the paper introduced to prove the appointment of the overseer, should have been rejected.   First, because it was neither an original nor a sworn copy.   Secondly, because on its face it shews no sufficient ground.   It says *Wooding* is *spending,* not *wasting* his estate.   It must shew both, according to the statute.   *Stat.* 276. *tit.* 49. *s.* 6.   The select-men must *specify* the ground, in the appointment.   The statute being in derogation of common right, must be construed strictly, and be strictly pursued. 5 *Conn. Rep.* 357.   Thirdly, because the bill of sale was given to secure bail for *Wooding's* appearance at court ; the bail being his counsel.   The matter was not, therefore, under the supervision of an overseer.   It was a matter about which there could be no discretion.   It was a judicial contract made

with the public. It was in effect defending a prosecution; and it is well settled, that this statute does not prevent, either in its letter or spirit, a person under an overseer from bringing a suit or defending one, without the consent of his overseer. In the case of *Strong* v. *Birchard,* 5 *Conn. Rep.* 357. it was held, that a person under an overseer can appoint appraisers of land on an execution against him ; this not being a *contract* within the letter, or an act within the spirit, of the statute. And if such person can sue or defend by law,—as the law does nothing in vain,—he may, without the concurrence of the overseer, employ persons to conduct such suit or defence, and secure them ; for when the law gives a right, it imparts what may be necessary to enjoy that right.

2. That the court should have charged the jury, that if it was fit and proper that *Wooding* should be liberated and give bail, the security given by him for his bail was valid, whether assented to, by the overseer, or not ; as it would be his duty, in that case, to assent. *Stat.* 176. *tit.* 49. *s.* 7. If such is not the law, what security is there against the abuse of the overseer ?

3. That the court ought to have admitted evidence to shew that *Wooding* never submitted, and appealed to the next county court ; and that the select-men of *Cheshire* then abandoned the appointment. An appeal, in such case, suspends the appointment, as an appeal to a higher court suspends the judgment of an inferior court.

4. That the court should have admitted evidence to shew, that when the overseer was appointed, *Wooding* was in the custody of the officer, about going to *New-Haven* gaol ; when he could not attend and answer; when he was going to another town, and was in effect residing in another town.

5. That the court should have admitted evidence that the pretended overseer assented, as soon as the transaction came to his knowledge ; especially, in connexion with evidence that it was a matter proper for his consent.

*Baldwin,* contra.

SHERMAN, J. This is an action of trespass for taking personal property. The only question is that of title. The plaintiff claims under a sale to him by *Herman Wooding,* made

*New-Haven,* July, 1839.

Mix
*v.*
Peck.

on the 22nd of *September*, 1837.   The title of *Wooding*, at that time, is admitted.   After this sale, the property was attached, and regularly disposed of, by *William Peck*, one of the defendants, a creditor of *Wooding*.   The title of the plaintiff is denied, on the ground, that, at the time of the sale, *Wooding* was under an overseer; in which condition the statute provides, that " no person shall be capable of making a contract without his consent."   *Stat.* 276. *tit.* 49. *s.* 6.

The act precludes any claim by the plaintiff, if the appointment of the overseer was regular, and the evidence sufficient which was adduced to prove it.   The disability imposed is general; and no necessity, of which the overseer is legally competent and able to judge, will make a contract valid, without his assent.   That which is urged, by the plaintiff, arising from the imprisonment of *Wooding* and his want of bail, was very proper for the consideration of this overseer, and did not dispense with the salutary restraints of the statute.

The appointment is in proper form; and the duplicate shewn on the trial was competent evidence to prove it.   The causes assigned for the appointment, are those which the statute expressly specifies.

The residence of *Wooding* was in *Cheshire*; and he was subject to the inspection of the select-men, notwithstanding the custody of the officer.

The validity of the appointment could not be affected, by the appeal, without any action of the county court; nor had the revocation, by the select-men, any such retroactive power as to give validity, against an intervening attaching creditor, to contracts previously void; nor was the refusal of *Wooding* to submit to the appointment, or the assent of the overseer to the sale, after the attachment, of any avail.   All evidence of these facts was justly excluded by the court.

No improper omission or error is perceived in the charge given to the jury.

We should not advise a new trial.

In this opinion the other Judges concurred.

New trial not to be granted.