O. C. McINTOSH, Administrator, Appellant, v. H. G. WILSON, Sheriff, Appellee.

1. **Sale of Personal Property :** POSSESSION : RECORDING : EXECUTION. A son purchased, with money loaned him by his father, a one-half interest in a stock of merchandise. Afterwards, by written agreement, he relinquished all interest in the property to the father, but providing that he should continue to conduct the business, and should become owner of one-half of the same when payment of an amount stated should be made. This agreement was not recorded, and the son continued in possession of the property. An execution having been levied upon the property to satisfy a judgment against the son, the father sought to recover the same by replevin. · *Held*, that, in the absence of actual knowledge of the above agreement before the levy, one-half of the interest in the property was subject to the execution.

2. ———— : PHARMACY LAW : EVASION : ESTOPPEL. Where the owner of a stock of merchandise transferred the same to another, to be held and treated by him as its ostensible owner, for the purpose of

evading the law relating to registered pharmacists, and the property is levied upon under execution as that of the person so in possession, the real owner will be estopped from claiming any title thereto.

*Appeal from Wright District Court.*—Hon. D. R. Hindman, Judge.

Friday, October 24, 1890.

Action to recover the possession of specific personal property. After the evidence was fully submitted a verdict for the defendant was returned by direction of the court, and a judgment rendered thereon. The plaintiff appeals.

*R. M. Wright*, for appellant.

*Martin & Wambach*, for appellee.

Robinson, J.—In June, 1882, Alexander Latter and Dr. Brackett owned and conducted a drugstore at Goldfield, Iowa. In the month named Latter sold an undivided one-half of the stock of goods and business to N. M. Melrose and Dr. Morse, and Dr. Brackett sold to them one-third of his share, so that each of the three persons last named owned one-third of the property, and the business was carried on by them as copartners for a time. Dr. Morse made no payment for his share, and after a few months withdrew from the firm. After his withdrawal the business was carried on by N. M. Melrose and Dr. Brackett until October, 1883, their interests in the property being equal. On the date last named Dr. Brackett sold his interest to William Melrose, the father of N. M. Melrose. The latter had paid four hundred dollars on account of his purchase. That amount and whatever sums in addition he put into the business were loaned him by his father. When Dr. Brackett withdrew, an arrangement was made which is stated by the son as follows: "I told father that I did not think I would be able to handle half of it, and proposed that he should buy out Brackett,

assume my indebtedness, and I would run the business in my name. He bought out Dr. Brackett's business, and assumed my debts, and I took charge of the business in my name. It was because I held a retail tobacco and liquor license, and also because by father was debarred by the pharmacy law from running a drugstore." On January 1, 1885, the father and son signed an agreement in words as follows: "It is hereby agreed between Wm. Melrose and N. M. Melrose shall take charge of the drug business of William Melrose in his building in Goldfield, Iowa, and do all the business, buying, selling, etc., and shall receive one-half of the profits for his services, and whenever, he, N. M. Melrose, shall pay to me, Wm. Melrose, one-half of the amount paid by me for said drug stock, etc., he shall become owner of one-half the business." In January, 1886, a new agreement was made by which the son was to receive thirty dollars per month for his services. He testifies that he then abandoned his plan of buying an interest in the property, but the business was carried on as before. The father was in the store a large part of the time, and gave some directions as to what should be done.

On the twenty-third day of March, 1883, Root Bros. obtained a judgment in the district court of Hamilton county against N. M. Melrose for one hundred and twenty-five dollars and eight cents' damages, and twenty-two dollars and thirty cents' costs. On the twenty-eighth day of March, 1886, the sheriff of Wright county received an execution, issued to satisfy said judgment, and upon the same day levied it upon the stock of goods which was used in the business carried on in the name of the son, and claimed by the father, as already stated. Its admitted value is three hundred dollars. This action was commenced by William Melrose to recover the goods. Before the trial, his death was suggested, and his administrator was substituted as plaintiff. Judgment was rendered in favor of defendant, the sheriff of Wright county, for the amount required to satisfy the execution.

I.   The evidence shows that N. M. Melrose owned one-half of the stock and business, from the time Dr. Morse retired until October, 1883, when Dr. Brackett sold to plaintiff's intestate. The fact, that all the money he had paid on account of the business was furnished by his father, did not alter his legal relation to the property. The arrangement, by which his father was to assume his debts and take the property, was not made of record by an instrument in writing duly recorded, as provided by section 1923 of the Code.   The son remained in possession and carried on the business after the arrangement was made, the same as before.   It does not appear that defendant had any knowledge of the agreement, and we conclude there was not such a transfer of one-half the property in controversy, as would defeat the levy of defendant, but that it could be enforced to that extent by proper proceedings.

*1. Sale of personal property: possession: recording: execution.*

II.   A more serious question is presented as to the remainder of the property.   The judgment which the defendant seeks to collect was rendered when the business was owned and carried on by N. M. Melrose and Dr. Brackett, and before plaintiff's intestate had acquired any interest in it.   It is not shown when the debt upon which it was rendered was contracted, but there is nothing in the record to justify the presumption that credit was given to the debtor, on account of any interest he appeared to have in the property in question. Therefore, there is no ground for holding that plaintiff's intestate had so conducted himself with reference to the property as to mislead Root Bros. to their prejudice in the creation of the debt.   It clearly appears, however, that the father authorized his son to remain in possession and control of the property, and to conduct the business in his own name for an unlawful purpose.

*2. ——: pharmacy law: evasion: estoppel.*

Chapter 75 of the Acts of the Eighteenth General Assembly makes it unlawful for any person, not a

registered pharmacist, to conduct such a business as that carried on by the son. It was held in *State v. Norton*, 67 Iowa, 641, that the one who conducts a drugstore is the proprietor within the meaning of the act. The father could not become a registered pharmacist under the provisions of the act; and, to avoid the requirements and penalties provided by law, he arranged for his son to claim and appear to be the actual owner. Appellant contends that there was not, in fact, a conveyance of the property by the father to the son, and that the former would not have been estopped to assert his title as against the world, excepting claimants for a violation of laws regulating the practice of pharmacy, and the sale of intoxicating liquors. We do not think the claim can be sustained. The father clothed the son with all the visible badges of ownership, and authorized him to declare himself the owner for the purpose of violating the law. Contracts made in violation of law will not be enforced. *Caldwell v. Bridal*, 48 Iowa, 16 ; *Reynolds v. Nichols*, 12 Iowa, 403 ; *Lemon v. Grosskopf*, 22 Wis. 451 ; 3 Am. and Eng. Ency. of Law, 869, 872 and notes. "Contracts intended to promote or requiring the performance of acts forbidden by statute are void." *Dillon v. Ellen*, 46 Iowa, 300. A sale and delivery of property on Sunday is illegal, and in such a case the law will not enforce the agreement, but will leave the parties where it finds them. *Kinney v. McDermot*, 55 Iowa, 674 ; *Pike v. King*, 16 Iowa, 49. The property in controversy having been transferred to the son to be held and treated by him as its ostensible owner to accomplish a purpose prohibited by law, the father lost the right to reclaim it by law. It could have been used by the son for his own purposes, including the payment of his debts, and it was, therefore, subject to legal process in favor of his creditors. As the father claimed to own all the property, what we have said on this branch of the case applies to all.

The judgment of the district court is AFFIRMED.