# EDWARDS et al. v. BOYLE.

No. 2552.  Opinion Filed June 19, 1913.

(133 Pac. 233.)

1. **CONTRACTS—Illegal Contract—Parties in Pari Delicto—Cancellation.** Plaintiffs had about 10,000 acres inclosed in a pasture in which they were grazing between 3,000 and 4,000 cattle in violation. of the quarantine law. They also had a suit pending against defendant over title to a certain tract of land. Defendant threatened to petition the board of county commissioners to have the section lines opened and the quarantine board to have the cattle dipped unless plaintiffs would dismiss their suit and give him a quitclaim deed to the land. Plaintiffs dismissed the suit and gave defendant the quitclaim deed in consideration of their being allowed to inclose the section lines and to graze their cattle above the quarantine line in violation of law. After they had had the benefit of the pasture, they brought this suit to cancel the quitclaim deed on the ground that it was given under duress. Held, the contract being in violation of law and the parties in pari delicto, a court of equity will not take cognizance of their rights arising thereunder.

2. **CONTRACTS—Illegality—Relief.** Where the purpose of a contract is to violate the law and the parties thereto are equally cognizant of its nature and equal participants in carrying out its purpose, a court of equity will grant relief to neither party, but will leave them to their strict rights.

3. **DEEDS—Execution—Duress—Menace—Fraud.** Where the defendant obtained a quitclaim deed of certain land in controversy from complainants in consideration of permitting complainants to violate the law prohibiting the inclosure of several sections of land as a pasture, and also permitting complainants to violate the quarantine regulations which if complied with would have required complainants to dip a large band of cattle at a great expense, the deed was not subject to vacation as having been obtained by duress, menace, or fraud.

(Syllabus by Harrison, C.)

*Error from District Court, Wagoner County;*
*Chas. Bagg, Judge.*

Action by W. C. Edwards and another against Bernard Boyle to cancel a deed and remove a cloud on title to real property. Judgment for defendant, and plaintiffs bring error. Reversed and remanded, with directions.

*Robert F. Blair* and *Henry M. Brown,* for plaintiffs in error.

*Enloe V. Vernor, W. W. Padgett,* and *W. W. Dillard,* for defendant in error.

Opinion by HARRISON, C. This action. was begun in January, 1909, by W. C. Edwards and J. P. Edwards against Bernard Boyle to cancel a deed to a certain 120-acre tract of land, which deed plaintiffs alleged had been procured from them by defendant through duress, menace, and fraud and without consideration. In October, 1910, the cause was tried and judgment rendered in favor of defendant. Plaintiffs appealed upon six assignments of error, but relying principally on the refusal of the court to give a peremptory instruction in plaintiffs' favor and to the giving by the court of an instruction in favor of defendant.

There was evidence that plaintiffs had inclosed about 10,-000 acres of land in a pasture; that they had some 3,200 to 3,400 head of cattle in this pasture; that the cattle had been brought over the quarantine line without being dipped; that, in order to maintain their pasture all in one, plaintiffs had closed all the section lines running through such pasture; that they had made a satisfactory settlement as to their being permitted to close the section lines with all the neighbors and parties interested except the defendant, Bernard Boyle. Boyle had refused to acquiesce in their closing the section lines, it seems, principally, on the ground that a suit was pending between plaintiffs and defendant over title to the 120-acre tract of land which is made the subject of controversy here. It seems that each party had a deed to the tract from the original allottee, and the plaintiffs here had brought suit against this defendant to have his deed from the allottee canceled and their deed from the allottee declared valid. The rights of the respective parties in the other suit do not appear in this record, but it seems that the defendant felt himself aggrieved because of such a suit and saw the opportunity to force a dismissal of

same and to obtain a quitclaim deed from plaintiffs by the following procedure: He refused to consent to plaintiffs closing the section lines and to plaintiffs maintaining their cattle above the quarantine line without having them dipped unless plaintiffs would execute a quitclaim deed to the tract of land in question. Plaintiffs objected to defendant's demand and protested against executing the quitclaim deed on the ground that it was a "hold-up," but defendant continued obstinate, claiming that he held the "whip-hand" and that he would force plaintiffs to "come across" or open up "those section lines" and have the cattle dipped, having in the meanttme circulated a petition to the board of county commissioners to have the section lines opened and a petition to the quarantine board to have the cattle dipped. Plaintiffs feeling that they would sustain great loss, a loss which they estimated at $10,000 to $15,000, if they were forced to open the section lines and have their cattle dipped, finally, though reluctantly, executed a quitclaim deed to the tract of land in April, 1908. In January, 1909, they brought this action to cancel the quitclaim deed. At the conclusion of the testimony the court gave the following instruction:

"Gentlemen of the jury, this is a suit filed by W. C. Edwards and J. P. Edwards against the defendant, Bernard Boyle, to cancel a certain deed executed by them on the 21st day of April, 1908, to the defendant, Bernard Boyle, claiming and alleging that same was procured by means of duress, menace, and fraud and without consideration. The defendant, Boyle, filed his answer denying each and every allegation of plaintiffs' petition. The court now instructs you that there has been no proof of any duress, menace, or fraud, and that the plaintiffs cannot raise or question the consideration; there being no fraud in connection with the execution of said deed. You are therefore directed to return a verdict in favor of the defendant, Bernard Boyle."

Following this instruction the jury returned a verdict in favor of defendant. Whereupon the court rendered the following judgment:

"* * * The court finds that the quitclaim deed executed by the plaintiffs, W. C. Edwards and J. P. Edwards, on the 4th day of April, 1908, conveying the (describing the land) to the defendant, Bernard Boyle, was not obained by means of duress, menace, and fraud and without consideration, but is valid and binding between the parties to this action. It is therefore considered, ordered, and adjudged by the court that said quitclaim deed be and the same is hereby declared valid; that plaintiffs take nothing by this action, and that defendant, Bernard Boyle, have and recover of and from the plaintiffs, W. C. Edwards and J. P. Edwards, all his costs herein laid out and expended, for which execution may issue. Chas. Bagg, Judge."

From this judgment plaintiffs appeal upon six assignments of error, but relying principally upon the court's refusal to give the peremptory instruction in favor of plaintiffs and upon the giving by the court of the instruction above.

We are of the opinion that the court was correct in instructing the jury that no duress, menace, or fraud had been proven. An effort to require plaintiffs to do that which the law required them to do does not constitute such duress or menace as is contemplated by law. The defendant was not threatening to do anything unlawful, nor were plaintiffs being menaced with any unlawful violence. They were being threatened only with the enforcement of the law. They had violated the quarantine law by bringing their cattle across the line without having them dipped and were evading the road law by maintaining fences across the section lines. Neither in circulating a petition to the quarantine board to have the cattle dipped, nor in circulating a petition to the board of county commissioners to have the section lines opened, was defendant doing anything unlawful. Plaintiffs could have obeyed the law and refused to execute the quitclaim deed. They had their choice and chose to violate the law themselves and purchase an acquiescence in their violation by the quitclaim deed, rather than obey it by opening the section lines and having the cattle dipped. They estimated that by opening the section lines and having the cattle dipped they would sustain a loss of $15,000. If such

be true, then they saved the difference between what the 120 acres of land was worth and the $15,000 by being permitted to violate the law. This was the real consideration in the transaction. The plaintiffs were in the wrong by violating the law and the defendant in the wrong by acquiescing in such violation for a consideration, and a court of equity will close its doors to such a transaction and leave the parties where it found them.

The contract herein was illegal from its inception. The moving consideration on the part of plaintiffs was that they would give the quitclaim deed in question to be allowed to violate the law, and, on the part of defendant, that he would accept the quitclaim deed and permit them, so far as he was concerned, to violate the law.

"The general rule is that, where an illegal contract has been made, neither courts of law nor of equity will interfere to grant any relief to the parties but will leave them where they find them, if they have been equally cognizant of the illegality." (2 Story [C] 486; 2 Parsons, 746; 2 Addison, 715, 724; 1 Pomeroy, 402.)

The force of this doctrine has been recognized and followed in the following cases: *Shattuck v. Watson,* 53 Ark. 147, 13 S. W. 516, 7 L. R. A. 551; *Haynes v. Rudd,* 102 N. Y. 372, 7 N. E. 287, 55 Am. Rep. 815; *Kelly v. Courter,* 1 Okla. 277, 30 Pac. 372; *Stanard v. Sampson,* 23 Okla. 13, 99 Pac. 796; *Los Angeles v. City Bank,* 100 Cal. 18, 34 Pac. 510; *Garrison v. Burnes,* 98 Ga. 762, 26 S. E. 471; *Winchester Electric Light Co. v. Veal,* 145 Ind. 506, 41 N. E. 334, 44 N. E. 353; *McIntosh v. Wilson,* 81 Iowa, 339, 46 N. W. 1003; *Sheldon v. Pruessner,* 52 Kan. 579, 35 Pac. 201, 22 L. R. A. 709; *Snell v. Dwight,* 120 Mass. 9; *Atwood v. Fisk,* 101 Mass. 363, 100 Am. Dec. 124; *Niagara Falls Brewing Co. v. Wall,* 98 Mich. 158, 57 N. W. 99; *Leveroos v. Reis,* 52 Minn. 259, 53 N. W. 1155; *Storz v. Finkelstein,* 46 Neb. 577, 65 N. W. 195, 30 L. R. A. 644; *Springfield Fire & Marine Ins. Co. v. Hull,* 51 Ohio St. 270, 37 N. E. 1116, 25 L. R. A. 37; *Roy v. Harney Peak Tin Min., Mill & Mfg. Co.,* 21 S. D. 140, 110 N. W.

106, 9 L. R. A. (N. S.) 529, 130 Am. St. Rep. 706; *Thomas v. City of Richmond,* 12 Wall. 349, 20 L. Ed. 453; *Higgins v. Mc-Crea,* 116 U. S. 671, 6 Sup. Ct. 557, 29 L. Ed. 764; *Dent v. Ferguson,* 132 U. S. 50, 10 Sup. Ct. 13, 33 L. Ed. 242.

Hence, while we think the trial court was correct in holding that no duress, menace, or fraud as contemplated by law had been shown, yet we cannot agree with that portion of the judgment decreeing defendant's deed to be valid. The court should have gone no further after ascertaining the circumstances out of which this action grew than to have ordered the action dismissed and left the parties where it found them.

"A court of chancery will not entertain a bill to cancel an obligation, the consideration of which is a violation of chastity, compounding a felony, smuggling, gaming, false swearing, or the commission of any crime, or a breach of good morals." (*Weakley v. Watkins,* 26 Tenn. [7 Humph.] 356.)

"A plaintiff, who founds his cause of action on an illegal or immoral act, has no standing in a court of equity; and, where both parties have been engaged in an unlawful transaction, the court will neither lend its active aid to the one party to get rid of the securities taken upon such transaction, nor assist the other party in retaining them, but will leave both to their strict legal rights." (*Kahn v. Walton,* 46 Ohio St. 195, 20 N. E. 203.)

The case at bar comes clearly within the above rule. It was a contract to violate the law. The parties thereto were equally cognizant of its nature and equal participants in carrying out its purpose. In such cases a court of equity will not take cognizance of rights arising thereunder nor grant relief to either party, but will leave them to their strict legal rights.

The judgment should be reversed, and the cause remanded, with directions to dismiss the action.

By the Court: It is so ordered.