Stokes, C. J.
It is unnecessary to consider the law as applicable to the claim of the plaintiffs, that the indorsement bv the defendant of the note in question was made in pursuance of, and to carry into effect, an agreement of an isolated and independent character between the plaintiffs and Gaines, which had no connection with, and was not to be affected by, the action of any of the other creditors of the latter; because the existence of such an isolated or independent agreement was negatived by the jury. For, under the charge of the court, they must have found that the indorsement of the defendants was made in pursuance of the agreement of July 80,1856, between Dan Gaines, and Gaines & Jerome, and their creditors, which was given in evidence on the trial, and which is nothing, more or less, *than what is termed a composition agreement, [ *153 j constituting a contract between the debtors and each and all of the creditors therein mentioned, as well as between those creditors themselves, and which is to be governed, as to its validity and effect, by the general principles of law applicable to such contracts. Whether, under that charge, the jury were warranted in finding the existence of such a composition agreement, can be considered only upon that branch of the motion which claims that the verdict was against the evidence. The fact, for the purpose of considering the correctness of the charge in point of law, must be deemed to be established.
The jury were instructed that if they found the indorsement in question to have been made pursuant to the terms of, and to carry into effect, the composition agreement, they should render a verdict for the defendant, if they should also find, first, that the signing of that agreement by Woolsey, one of the creditors of Gaines, was not waived by the defendant, either expressly, or by his having indorsed the note in question with the knowledge of an arrangement between the debtors and creditors, by which the execution of the contract by Woolsey should be dispensed with ; or 2d, that without the knowledge of the defendant, the plaintiffs stipulated with Gaines, as a condition on which they would execute the compromise agreement, that he should give his individual note for the balance of the debt, and he gave it pursuant to such stipulation; or, 3d, that a debt of M. J. Jerome, for which neither Gaines nor Gaines & Jerome were liable, was included in the note now in question, as a condition of the compromise, and without the knowledge of the defendant. This charge is plainly correct in regard to the effect of a non- *126 execution of the agreement by Woolsey, without any such waiver. The validity of the defendant’s indorsement must depend upon the validity of the compromise agreement which it was designed to effectuate,'and to which the indorsement was, like other contracts of suretyship, accessory or collateral. In regard to that agreement, it was one of its express stipulations that it should not be binding on any of the parties, [ *154 ] unless it should be-signed by *allthe creditors of the debtors therein mentioned.- No authority can be necessary to show that, without a compliance with' that stipulation, the agreement would not take effect as a consummated contract, unless the - execution of it by some of the creditors should be dispensed with. In regard to the effect of such a dispensation, the jury were instructed that it would be a waiver of the execution of the agreement by such creditors, and render it valid as to the parties who should sign it. This part of the charge was obviously favorable-to the plaintiffs, arid they, .therefore, can not complain of it, although we- think that it was entirely correct. In regard to the stipulation that Gaines should give his individual note for the balance of -the debt beyond what was secured by the defendant’s indorsement, it is clear, and indeed it is not controverted by the-plaintiffs, that such stipulation would be void, and that the note given in pursuance of it would be invalid ; and that even its amount, if it had been paid by Gaines, could be recovered back by him from the plaintiffs. They, however, claim that although the note would be thus void, the contract evidenced by the indorsement of the defendant ivas valid, and can therefore be enforced by the plaintiffs. The earlier cases appear to favor this claim. But the more recent decisions hold that, in such a case, both the note given by the debtor for the balance of his debt, and also the agreement made or security given for the compounding or compromise of the original debt, would be equally void, and that, therefore, neither can be enforced. We are of the opinion, for thp reasons given by the court in Howden v. Haigh, 11 Ad. & El., 1033, without going into a more particular examination of the question, that such a stipulation as has been mentioned is not only of itself invalid, but that it also invalidates the whole of the compromise agreement with-which it was connected, on the ground that such a stipulation is a fraud upon the other creditors, and that it is so connected with and a part of the compromise agreement, that-it can not be-separated [ *155 ] *from, and therefore fatally taints that agreement. Previous to the decision of that case, it would seem that the courts, treating this subject as- one of public policy, *127 were 'disposed to invalidate only that part of the agreement which provided for the payment of the balance of the debt beyond that part of it which was secured by the composition, and to let the composition itself stand good. And they were probably further influenced to this course by the consideration of the inconvenient and injurious consequences which might flow from setting aside the whole composition. We do not, however, well see how, on principle, the part of the agreement respecting the payment of the balance, if it were a fraud upon the other creditors, could on that ground be invalidated, without its affecting in tlie same way the validity of the compromise agreement of which such confessedly fraudulent stipulation is a part. But, apart from the principles which apply peculiarly to composition agreements, and looking at those only which are established in respect to the relation between sureties and those to whom they become bound, we are further of the opinion, that it was the duty of the plaintiffs in this case to inform the defendant before the latter assumed the obligations of a surety, that Gaines had agreed to pay the balance of the debt beyond what was secured by the defendant’s indorsement, and that the concealment of it from the defendant exonerated him from the obligations of his indorsement. It is a clear and well settled principle that a security given by a surety is voidable on the ground of fraud, if there is, with the knowledge or assent of the creditor, such a misrepresentation to, or concealment from the surety, of the transaction between the creditor and his debtor, that, but for the same having taken place, either the suretyship would not have been entered into at all, or being entered into, the extent of the surety’s liability might be thereby increased. Stone v. Compton, 5 Bing. N. C., 142. Pidcock v. Bishop, 3 B. & C., 605. S. C., Dow. & Ry., 505. Cecil v. Plaistow, 1 Anst., 202. Nerot v. Wallace, 3 T. R., Middleton v. Onslow, 1 P. Wms., 768. Tapp v. Lee, 3 Bos. & Pul., 371. Burge on Suretyship, Ch. 9. The stipulation ^now in question was one which, if known to the defendant, would plainly have been calculated to influence him materially *in determining whether he would [ *156 ] become surety for that part of the debt which was to be secured, according to the composition agreement, by his indorsement. The object of that agreement manifestly was, to relieve the debtors, for whom the defendant was to become surety, from their liability for a proportion of their debts, on giving security for the payment of the remainder; and it was to favor the debtors in this respect, that the defendant was induced to become their surety for such *128 remainder. It is, however, obvious that that object would be frustrated, if the debtors were still to remain liable for the balance of what was not so secured. The ability of the debtor, in this case, to indemnify the plaintiffs for what they might be compelled to pay on the obligation they had assumed, would, moreover, be essentially impaired, by leaving the debtor still liable for that balance. Nor do we think it a sufficient answer in the mouth of the plaintiffs, that the stipulation for the payment of such balance could not be enforced. The contract of the defendant was one which he would not have made if he had been aware of all the facts in the case, and it would not be just to place him in a situation where he might not be able to ferret out such a secret and fraudulent arrangement, or control or prevent, at least without great expense and trouble, the effect- of it. We, therefore, think that on this subject also the charge below was correct. We are further of the opinion that the" defendant should not be held liable on the note in question, if, without his knowledge, a debt of M. J. Jerome, for which neither Gaines nor the firm of Gaines & Jerome was liable, was included in the note, as a condition, between the plaintiffs and Gaines, of the compromise. Such a debt was not one which, by the terms of the compromise agreement, was to be secured to the plaintiffs. That agreement, by a just construction, contemplated that the security therein mentioned should be given only to the respective creditors themselves, for a proportion of their own debts. If, indeed, the defendant, knowing that the debt of M. J. Jerome had been assigned to the plaintiffs, consented to include it in the notes, he could not object on that account. But it [ *157 ] ought *very clearly to appear that it was understood by him that it was so included. It is not enough for a creditor to say to a surety for his debtor, that the effect of departing from or varying the agreement of the surety has not been injurious to him. Such agreements are to be construed favorably for sureties, and it is sufficient for them to reply that they are not held by any other than the strict terms of their engagements.
On the remaining question, whether the verdict is against the evidence, we are of the opinion that, in regard to the character of the agreement in pursuance of which the note in question was executed, the jury were not only warranted in the verdict they rendered, but that the evidence would have justified no other; and although, as to the facts upon which the other branches of the case depended, the evidence was not decisive to the same degree, it was such that we do not feel at liberty to pronounce the verdict to be manifestly against it.
*129 A new trial is not advised.
In this opinion the other judges concurred.
New trial not advised.