## 30463. CARTER *et al. v.* BUTLER.

DECIDED JUNE 14, 1944.   REHEARING DENIED JULY 26, 1944.

*Richard T. Nesbitt,* for plaintiffs in error.
*W. S. Northcutt,* contra.

*Douglas B. Maggs, Archibald Cox, Bessie Margolin, George A. Downing, James H. Shelton, Thomas T. Purdom,* as amici curiæ.

PARKER, J.   J. L. Butler brought suit against Frank Carter Jr. and Mrs. Julia Akins, the owners and operators of Superior Printing Company.   He claimed that they owed him a stated amount as wages for overtime worked by him while employed as a printer by the defendants, and a like amount as liquidated damages, and an additional sum as attorney's fees.   The action was brought under the fair labor standards act of 1938 (29 U. S. C. A., §§ 201 et seq.). The defendants denied any indebtedness to the plaintiff, contending that he had been paid in full for all services rendered.   The jury returned a verdict for the plaintiff for $465.07 overtime, $465.07 liquidated damages, and $200 attorney's fees.   The defendants' motion for new trial was overruled, and they excepted.

■   One principle of law controls this case.   Butler, the plaintiff in the trial court, testified that at the request of the defendant Carter, he and Carter agreed that they would show on the company pay-roll sheets only eight hours for each of five days per week as the time worked by the plaintiff, and would not show any overtime; that Carter said he would figure with the plaintiff about any overtime, and that the plaintiff would be given his overtime at the end of six months; that he had to sign the pay-roll

sheets showing eight hours each day for five days, aggregating forty hours, in order to hold his job; that in so doing he was just carrying out the instructions of Carter; that each was to keep a private record of the plaintiff's overtime, and that Carter was to settle with the plaintiff later; and that the plaintiff kept his own memorandum record of overtime hours worked in two small books by means of certain dots and figures and ditto marks inserted therein. The plaintiff admitted that after the agreement he claimed to have had with Carter he signed the weekly time record of the printing company showing the names of employees, and the number of hours worked each day of the week from Monday through Saturday, both preceded and followed by his signature, for a period of forty-eight weeks, from September, 1941, until July, 1942, the same period of time covered by his suit; and that he signed such pay-roll sheets incorrectly, as they were not correct records of the time he worked, and that he knew they were incorrect when he signed them. The defendants introduced in evidence the forty-eight weekly time records, all signed by the plaintiff, each of which showed not more than forty hours worked in any one week, and that no overtime or hours were worked on Saturdays. Checks of the printing concern payable to the plaintiff showing payment of these forty-eight weekly pay-roll accounts in full each week were also introduced. Each of these checks recited that it was "in payment of 40 hours." It thus appears from the testimony of the plaintiff, borne out by the records introduced by the defendants, that, if his testimony represents the truth of the matter, he agreed with the defendant Carter to make false reports and incorrect weekly pay-roll sheets respecting any overtime he might work in the employ of the defendants, and that the overtime for which he sued was the fruit of an illegal agreement. It should be said that Carter denied that he and the plaintiff had made any such agreement as to overtime, but the burden of proof was on the plaintiff and he is bound by his case as made.

The fair labor standards act provides in section 211 (c) that, "Every employer subject to any provision of sections 201-219 of this title . . shall make, keep and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make

such reports therefrom to the Administrator as he shall prescribe." Under section 215 (5) of the act it is unlawful for any person "to violate any of the provisions of section 211 (c) of this title, or to make any statement, report, or record filed or kept pursuant to the provisions of such section or of any regulation or order thereunder, knowing such statement, report, or record to be false in a material respect." The next section prescribes a penalty of not more than $10,000, or imprisonment for not more than six months, or both, for any wilful violation of section 215. Under a state of facts as related by the testimony of the plaintiff both he and the defendant Carter would be guilty of violating the act under which the plaintiff sues, and as the parties to such illegal agreement they are in pari delicto. Even if there was no direct violation by the plaintiff, in that he was not required as an employee to make and keep records of his hours of work, he was *particeps criminis* with Carter. He agreed to make, and did make, according to his testimony, false weekly reports as to his overtime for almost a year. Furthermore, each of them would be guilty of a conspiracy, an independent offense, if they agreed to violate the fair labor standards act, and committed overt acts in furtherance of such agreement, as testified to by the plaintiff. "It is as well settled as any proposition can be, that neither a court of law nor a court of equity will lend its aid to either party to a contract founded upon an illegal or immoral consideration. If the contract is executed, it will be left to stand; if it be executory, neither party can enforce it. *Howell* v. *Fountain*, 3 *Ga.* 176 [46 Am. D. 415]; *Adams* v. *Barrett*, 5 *Ga.* 404; *Peacock* v. *Terry*, 9 *Ga.* 137; *White* v. *Crew*, 16 *Ga.* 416; *Ralston* v. *Boady*, 20 *Ga.* 449; *Bailey* v. *Milner*, 35 *Ga.* 330; *Bugg* v. *Towner*, 41 *Ga.* 315; *Thompson* v. *Cummings*, 68 *Ga.* 125." *Watkins* v. *Nugen*, 118 *Ga.* 372 (45 S. E. 262); *Bryson* v. *Keith*, 186 *Ga.* 616, 618 (199 S. E. 110). "Contracts that obviously and directly tend in a marked degree to bring about results that the law seeks to prevent can not be made the ground of a successful suit." Kniefel *v.* Keller, 207 Minn. 109 (290 N. W. 218); *Robinson* v. *Reynolds*, 194 *Ga.* 324 (21 S. E. 2d, 214). "The general rule deducible from all the authorities is as stated in Clarke on Contracts, 491, viz: 'that the court will not lend its aid to a party who, as the ground of his claim, must disclose an

illegal transaction.'" *Garrison* v. *Burns,* 98 *Ga.* 762, 765 (26 S. E. 471).

While the work done by the plaintiff under the contract was neither illegal nor immoral, it was to be done as overtime for which extra compensation was provided by law, and for which certain reports and records were required to be made and kept by the employer. When such employer and his employee agreed (if they did) to cover up and withhold from the government and those officers interested in the enforcement of the act, vital information required of them under the act, the agreement became an illegal transaction, and it vitiated the entire contract. Certainly the agreement to withhold true reports of the overtime worked by the plaintiff tended "in a marked degree to bring about results that the law seeks to prevent." Furthermore, the plaintiff had to disclose an illegal transaction as the ground of his claim as asserted in his suit. In Mortenson *v.* Western Light &c. Co., 42 Fed. Supp. 319, an action for such overtime pay in the district court for the southern district of Iowa, it was held that an employee who entered into an arrangement or understanding with the company for which he worked that he would assist it in making false reports to the administrative office functioning under the fair labor standards act would subject himself to prosecution as a principal in the failure of his employer to make and return accurate reports of the wages and hours of the employees of the company. That case also holds that an employee who made false reports as to overtime, without knowledge on the part of his employer as to their falsity, was estopped from asserting later that such reports were incorrect, and that he had worked a number of hours not shown by such reports for which he was entitled to overtime compensation. Counsel for the plaintiff contends that without estoppel having been pleaded by the defendants they can have no benefit from evidence supporting an estoppel against the plaintiff. We can not agree to that conclusion. In *Howell* v. *Fountain,* supra, the court said: "If from the plaintiff's own statement or otherwise, the cause of action appears to arise *ex turpi causa,* or the transgression of a positive law of this country, then the court says he has no right to be assisted. . . We can help him in no event upon his illegal or immoral contract." In *Bugg* v. *Towner,* supra, it was said: "It makes no difference whether the illegal transac-

tion is malum prohibitum or malum in se. In neither case will the courts of this State interfere to grant relief to either party. But they will leave the parties where they find them, no matter whether the illegality of the contract appears from the plaintiff's case or is set up by way of defense." These principles have been applied by this court in *Benson* v. *Georgian Co.,* 21 *Ga. App.* 448 (94 S. E. 644).

■ Under the evidence in this case, and the law applicable thereto, the agreement testified to by the plaintiff was illegal, a verdict in favor of the defendants was demanded as a matter of law, and the court erred in overruling the general grounds of the defendants' motion for new trial.

■ Under the foregoing rulings it is unnecessary to consider and pass upon the special grounds.

*Judgment reversed. Sutton, P. J., concurs.*

FELTON, J., dissenting. "The rule governing cases in which the parties are not in pari delicto is frequently applied where the transaction is in violation of a law made for the protection of one party against the acts of the other. As they are not equally guilty, the party protected may recover. A statute may declare an agreement to be void, and yet only one of the parties may be guilty of its violation. Enactments of this character are often made for the purpose of protecting one class of men from the oppression and imposition of another class of men. In such cases the really guilty party is never allowed relief under the statute or permitted to set up the statute as a defense to relief sought by the other party." 12 Am. Jur. 735, § 219. See, also, 17 C. J. S., 665, § 278 (a) (b). In this case the employee testified that he falsified his time record at the direction of his employer in order to "keep his job." For a number of reasons I do not think a recovery should be precluded in such cases as this. (1) The jury was authorized to find that the employee acted under duress; (2) the employee's act is not made a crime under Federal law either under the act under which the overtime wages were to have been paid or under any other Federal law; (3) the law was enacted for the benefit of the employee and those similarly situated, and to preclude his recovery would tend to destroy the legislative effort to accomplish the results intended by the act; (4) even if the employee was guilty of an illegal or immoral act the contract of employment

and the law under which he sought to recover are legal and enforceable, and it is not necessary for him to rely on or to bring into play the conduct in question in order to be entitled to recover, and the revelation of such conduct by the opposite party is ineffective to defeat the action under the circumstances of the case and the reasons above stated; (5) public policy would be better served to allow a recovery than to prohibit it, because, as already stated, the courts should uphold the legislative branches of the government when possible rather than obstruct them, and because the Federal act in question does not provide punishment for a violation of the law for the benefit of the public generally or as a matter of public morals. It would seem that the right to recover in such a case as this is analogous to the right of one to recover from an attorney, or another, overcharges in connection with the collection of war-risk insurance policies. In such cases the agreement of the veteran or his beneficiary to pay a forbidden sum is not penalized—the law is for their benefit, and therefore a recovery is permitted. I dissent from the judgment of reversal.