The plaintiff has brought this action to recover of the defendant, his former employer, unpaid overtime wages, also a sum equal to the said unpaid wages as liquidated damages, and reasonable attorney's fees, all of which he claims by virtue of the provisions of the Fair Labor Standards Act of 1938 (U.S. Code, tit. 29, § 201 et seq.). At the trial, the plaintiff withdrew paragraph 5 of his complaint covering the period from October 1, 1938, to December, 1940.
The period now covered by his claim is for the week ending January 5, 1941, to and including the week ending March 26, 1942.
The Act provides for a 40-hour week for the period covered by the plaintiff's claim and further provides that work in excess of 40 hours in any one work week shall be compensated for at the rate of not less than 1 1/2 times the regular rate of pay at which the employee is paid.
The defendant admits that in so far as this action is concerned it was engaged in interstate commerce and was subject to the provisions of the Act in relation to this plaintiff employee.
The plaintiff has worked for the defendant for the greater portion of 10 years as a glass bender. The defendant is a small company employing about 18 or 19 in the glass bending department. The employees, including the plaintiff, worked at piece work and were so paid. During some of the period involved, the plaintiff worked on Saturdays and Sundays on an hourly basis. For years, the glass benders had worked long hours, mostly at piece work.
The Act in question went into effect in 1938, and for the first year the work week was 44 hours and was lowered in succeeding years until the time in question when the work week was 40 hours.
After the Act was passed, the defendant posted a notice in the factory stating that no employee was to work overtime unless expressly authorized by an officer of the company. This cut the earnings of the employees substantially and caused serious discontent among them. *Page 287 
The plaintiff claims that the president of the company called the group of benders together and told them the company was a small one, that the business was highly competitive and that it could not pay for overtime. The employees, including the plaintiff, claim that the defendant's president on this occasion further stated that if they wished they could work overtime as formerly, provided they did not report time in excess of the regular work week hours. This the defendant has denied. Before the Act went into effect, the defendant's president knew that the employees worked long hours. He testified: "To clear the situation up, I called the men into the office and tried to familiarize them with our problems. Our work was chiefly alarm-clock crystals at the time, and I believe every one knew how competitive it was and that it was plain that we couldn't permit any one to work longer than the regular hours which did not come under the overtime category."
The plaintiff claims that thereafter he continued to work as before but, in accordance with the defendant's suggestion, he did not record his full time. He followed this procedure, except on the Saturdays and Sundays when he worked by the hour and on these occasions he recorded the correct time.
The plaintiff ceased working for the defendant in March, 1942. Sometime in February, 1943, he learned for the first time of his rights under the Act and in March, 1943; he instituted this action.
In support of his claim, the plaintiff introduced a record book, plaintiff's Exhibit A, which contains a complete record of his daily work for the entire period covered in this action. It contains the number of pieces made, the type of work, the code and rate of pay and the actual number of hours worked. Exhibit A, for the week ending January 5, 1941 to July, 1941, was copied from another book which the plaintiff had kept. When space became limited, he copied it into Exhibit A and destroyed the old book. The record in the previous book was taken from daily slips which he kept for the purpose of checking his pay each week. He would enter these facts from the slips into the book, after which he destroyed the slips. It was necessary for him to keep this record in order to check with the office. It was necessary to check the office on his pieces, rates and rejects. If the office was too far off from his record, he would check with the office on the discrepancy. Every day he filled out a time sheet provided by the defendant for the defendant's *Page 288 
records. He wrote his name and date on the top of the sheet. Under heading "name of Job" he entered the description of the work by its code. He also placed on the time sheet the number of pieces, the rate per piece and the incorrect number of hours. The lower half of the sheet was used by the company to check the work and make the computation of the pay earned by the plaintiff. At the end of each day, the time sheet was placed in a box provided by the defendant. After copying the contents of the previous book into Exhibit A, the plaintiff continued to make a duplicate copy of each day's work, which he entered in Exhibit A before the week was over, after which he destroyed his slips.
The defendant criticizes the correctness of Exhibit A. It claims that it is too neat and clear to have been prepared in the manner claimed by the plaintiff. It claims that it was written with the same pencil. It is a neat book. The plaintiff is one of those rather rare persons who likes to keep records. The defendant has not attacked the correctness of the plaintiff's entries by the time slips which it has in its possession.
The detail of Exhibit A is very minute and could not be a faked or guessed record. This fact is borne out by an examination of defendant's Exhibits 1 to 19 and 20 to 32. In the opinion of the court, Exhibit A is a correct record of the work done and the hours worked by the plaintiff.
The plaintiff claimed he was never paid for overtime. The defendant claims that he was paid for overtime for 13 weeks and in proof of its claim it submitted the time sheets (Exhibits 20 to 32) of the plaintiff, all of which show overtime payments.
Upon analysis of these exhibits, it appears that the plaintiff was not actually paid for overtime. By a peculiar manner of bookkeeping, it was made to appear that the plaintiff was paid for overtime. The manner of keeping the books was not known to the plaintiff. A study of the time slips makes the matter clear.
The plaintiff claims that he was paid on Saturdays and Sundays at the rate of $1 per hour. The defendant says the rate was 65 cents per hour. The court finds the rate to be $1 per hour. For example, take the time sheet for Sunday, November 23rd, in defendant's Exhibit 25. The plaintiff on his part of the time sheet made the entry that he made 2300 pieces of W.N.C. 4.722 in 8 hours. The defendant on its part of the time sheet placed the words 3 hours at $1 per hour. *Page 289 
 Then it put down 1430 pieces 3.30 4.72 10% .47
 3 hours at .65 1.95 ---- $1 per hour 7.14
 1.05 plus overtime ---- 8.19
The figures 1.95 1.05 were bracketed and alongside of the bracket it wrote $1.00 per hour.
 Thus 3 hours at $ .65 1.95 3 hours overtime at .35 1.05 ---- 3.00
Thus for 3 hours he received $3.00 or $1.00 per hour.
Five weeks of the 13 weeks disclosed in defendant's Exhibits 20 to 32 are typical of this peculiar bookkeeping. Take one of these days, Sunday, December 14th, in Exhibit 28. The plaintiff claimed to have worked 8 hours at the rate of $1 per hour. The defendant claims it was 65 cents per hour. The defendant paid the plaintiff $8.00 for this day and this is the way it figured the time.
 8 hours at .65 per hour 5.20 Overtime 2.80 ---- 8.00
The plaintiff earned more than a dollar an hour on many week days and always more than 65 cents per hour and it is inconceivable that he would work on a Sunday for 65 cents per hour for a total of $5.20.
In court, the plaintiff stated that he never reported less than 40 hours per week. To contradict this statement, the defendant produced the time sheets for 20 weeks (Exhibits 1 to 19). Each week showed varying hours per week, each of which was less than 40 hours. The defendant also claims that this misstatement on the plaintiff's part is also evidence that his computation of overtime is in error because, as he stated, he added his overtime for each week to 40 hours in estimating the amount due for overtime. It is true that the plaintiff was mistaken in his statement that he never worked undertime but *Page 290 
that fact does not make his computation of overtime incorrect. He may well be forgiven in not remembering what his custom was as to undertime. Apparently his custom, as disclosed by these undertime exhibits, was to note on the time slips not more than 7 hours a day, although he worked much longer than that, and was paid for his pieces and not by the time. When he worked by the hour or on day work he put down the correct time. On days when he was paid partly on a day or hourly basis and partly by piece work, he invariably recorded on the time sheets the difference between the hours he worked at day work and the hours at piece work and 7 hours was reported as the time he worked at piece work so that the total did not exceed 7 hours. That process in handling those time sheets showed undertime.
A spot testing of the plaintiff's Exhibit A with the defendant's exhibits of time sheets shows Exhibit A to be correct in account.
A comparison of the number of pieces made by the plaintiff on the hourly basis with the number of pieces made when he was paid on the piece basis shows that he could not have made the number of pieces on the piece rate in the time placed on the time sheet when working on piece work. That he made the pieces claimed is proved by the fact that the defendant paid him for them.
The time required to make the pieces on a time basis compares favorably with the time as shown in the hourly basis, thus establishing that the time required was as stated in the plaintiff's claim and not the time stated on his time sheet, and this is true making allowance for the possibility that he did not work as fast by the hour as when working on piece work. There is no evidence of any complaint by the defendant of the amount of work done by the plaintiff when working by the hour. Also, the defendant knew well the number of pieces that the plaintiff should reasonably turn out in a given time.
The defendant knew that the plaintiff was working overtime and that he was reporting less hours on his time than he actually worked, all of which met with the defendant's approval. The manner in which the defendant computed overtime is evidence of its knowledge. A record of employment without overtime would be significant to an inspector. *Page 291 
The president's admitted talk to the employees to cure their discontent at not being able to work overtime did not bulk very strong with the court. It left unexplained the manner by which the defendant expected to fill its orders. There is no evidence of the hiring of extra help. the talk contained no argument which would persuade the most sympathetic employee to be content with less pay at a time when greater pay was in order. When the plaintiff left the employ of the defendant it gave him a letter of recommendation (Exhibit C) which stated, among other things, that the plaintiff was not afraid of hard work and long hours.
Is the plaintiff in pari delicto with the defendant and thusbarred from recovery from the defendant under the statute?
The plaintiff frankly admitted that he made untrue entries of his hours of work on the time sheets, but says that this was done because of the defendant's orders and to permit him to earn his usual wage. These acts of the plaintiff enabled the defendant to evade the Act and to avoid its provisions which were for the benefit of the other workmen and this plaintiff.
The purpose of the Act was to improve the position for workmen in this class and to protect them from unreasonable working hours required by the defendant. The defendant cites the case of Carter vs. Butler in the Court of Appeals of the State of Georgia, Division No. 2 (31 S.E.2d 210) as being on all fours with the case at bar. It seems to the court that the facts in the Butler case are materially different. In the Georgia case, the plaintiff employee not only agreed with his employer not to report overtime but he also agreed that the employer would pay him for overtime at a later date. In the case at bar, the plaintiff was simply trying to earn his usual pay and in order to do so he was ordered not to record overtime. There is a material difference in the degree of culpability involved in the two cases. Even assuming the defendant's interpretation is correct, it would seem that the dissenting opinion in that case is the more sound and is supported by many authorities. The plaintiff here did not occupy an equal bargaining position with the defendant. He was under duress. He had worked for the defendant for a long time and was not aware of the purport of the Act. His acts were not a crime under the statute. The Act was enacted for his benefit and expressed a public policy for all workmen who came under its provisions. To deprive him of the rights thereunder, *Page 292 
would tend to destroy the effect and defeat the purpose of the law. The plaintiff made these wrong entries to hold his job and with the approval of the defendant.
Cases under the O.P.A. seem to present an analogous situation to this case. The law regulating the ceiling prices of commodities is for the benefit of all the people. One of its purposes is to provide commodities for all the people at the same price. Another purpose is to prohibit black markets. Courts, however, have held that a person who knowingly purchases a commodity above the ceiling price may nevertheless, under the Act, recover of the seller treble damages. It has been held that such a purchaser is not in pari delicto. Zwang vs. A. P.Food Stores, 181 Misc. (N.Y.) 375.
The doctrine that the parties to an illegal transaction are notin pari delicto and that the less guilty may recover is especially applicable where although the parties concur in the illegal act, some fraud, duress, oppression, imposition, or undue influence is practiced by one party upon the other so that it appears that the guilt of the latter is subordinate to that of the former. 12Am. Jur., Contracts, § 219, 736.
A debtor who has paid on a note constituting fraudulent preference may recover this payment from the creditor. Doughtyvs. Savage, 28 Conn. 146, also cited in Baldwin vs. Rosenman,49 id. 105.
The plaintiff was a glass bender and had worked long hours over a hot oil furnace. He had worked for the defendant for a long time and was used to the long hours. This Act was passed for his benefit. The defendant's notice that plaintiff could not work overtime worried him. He was not aware of his rights, he wanted to work. The way out was to work as of yore and put down incorrect time with the defendant's consent. The company was in the dominant position at least in the mind of the plaintiff.
In the ancient case of Smith vs. Cuff, (6 M. S. 160) Lord Ellenborough said: "This is not a case of par delictum: it is oppression on one side, and submission on the other: it never can be predicated as par delictum, when one holds the rod, and the other bows to it."
The issues are found for the plaintiff. The court finds the plaintiff worked the hours overtime as disclosed in his more specific statement, viz., 899 1/2, and at the rates computed therein. *Page 293 
 A judgment is ordered for the plaintiff to recover of the defendant $370.68 for said overtime, plus $370.68 as liquidated damages and $150 for reasonable attorney's fees, or a total of $891.36.